[No. 2,338.]

NATHANIEL GRAY *v.* JOSEPH C. COLLINS, LOUIS TRENCH, THOMAS CHAPMAN, WILLIAM SHERIDAN, AND S. B. THOMPSON.

PEACEABLE AND ACTUAL POSSESSION UNDER FORCIBLE ENTRY LAW.— In a forcible entry case, where it appeared that the property was a city lot; that plaintiff built a substantial fence, which, with the house and fence of a neighbor on one side, made a complete inclosure, and planted two dozen ornamental trees along two sides of it; and that this state of things continued two months, when defendants entered; *held,* that the plaintiff was in the peaceable and actual possession of the lot, within the meaning of the forcible entry law, without residing or having a house upon it.

A FENCE ALONE AS SHOWING ACTUAL POSSESSION.—Residence upon premises is not indispensable to their actual possession, nor is cultivation necessary, nor improvement, as contradistinguished from the erection of fences or substantial barriers, marking the line of the premises over which control is asserted.

CULTIVATION OF CITY LOT—ORNAMENTAL TREES.—The erection of a substantial fence and planting of ornamental trees around a city lot amount to actual possession and cultivation of it, as appropriate to such lot as the seasonable plowing and sowing of agricultural lands would be, and equally significant as acts manifesting control over the premises.

WHAT IS A "FORCIBLE" ENTRY?—The forcible entry statute now in force (Stats. 1865-6, p. 768) was evidently drawn to avoid nice distinctions as to the amount of force necessary to constitute an entry a forcible one within its intent.

"CIRCUMSTANCES OF TERROR" MAKING AN ENTRY FORCIBLE.—Where a large number of men were employed to take possession of premises in the possession of another, though he had no house on them, and was not personally present, and they entered hurriedly at daylight, tore down one fence, and put up another and a shanty, and fired off a pistol shot to celebrate its completion; *held,* that there were sufficient "circumstances of terror" to make the entry a forcible one.

APPEAL from the County·Court of the City and County of San Francisco.

The lot in controversy had a front of forty-eight feet nine inches on Post street, and seven feet nine inches on Sutter street, being a long strip in the middle of a block. The entry, as found by the referee, was made under the following circumstances:

" On the morning of the 17th or 18th of February, 1869, the defendant Collins, a little after daylight, with a force of ten men, eight of whom were carpenters, employed by him in putting up a building in the neighborhood, went into the lot and tore down the fence on the west line, and constructed another parallel with the east line of the lot, and also put up a cross fence, cutting out plaintiff's previous inclosure midway between Post and Sutter street lines—the lot thus inclosed being about fifty feet front on Post street, and running back half way to Sutter street. While the fence was being taken down and rebuilt on the new line, and the cross fence put up, a shanty was erected on the lot, the material of which was brought from an adjoining lot by the defendant and his men immediately on their arrival in the morning. The fence and the shanty were hurriedly put up in a rough manner, and all completed by eleven o'clock in the forenoon of the day when the work was commenced; and the completion of the job was celebrated by a pistol shot. Two men in the employ of the defendant Collins remained in charge of the property."

As conclusions of law, from the facts of the plaintiff's possession as stated in the opinion and the defendants' entry as above set forth, the referee found that the plaintiff had no actual possession of the lot, and that defendants had not been guilty of any forcible entry. Judgment having been

entered in accordance with the referee's report for defendants, the plaintiff appealed.

*Gray & Haven*, for Appellant.

The possession of plaintiff was actual, and peaceable, and sufficient. (*Hutchinson* v. *Perley*, 4 Cal. 33; *Hicks* v. *Davis*, 4 Cal. 67; *House* v. *Keiser*, 8 Cal. 501; *Preston* v. *Kehoe*, 15 Cal. 316; *Minturn* v. *Burr*, 16 Cal. 107; *Hussey* v. *McDermett*, 23 Cal. 413; *Commins* v. *Scott*, 23 Cal. 527; *Hoag* v. *Pierce*, 28 Cal. 187; *Brummagim* v. *Bradshaw*, 39 Cal. 24.)

The object of the forcible entry statute is to prohibit not simply an actual breach of the peace, but everything which would tend to produce a breach of the peace. And as an entry with a strong force of men upon the possession of another would tend to or might lead to a breach of the peace, whether any person was present or not at the time of entry, all such modes of entry are prohibited. And this we understand to be the doctrine established by this Court in *Brown* v. *Perry*, 39 Cal. 23.

The entry of defendants was wrongful and forcible. The question of legal right to enter relates to the fact of possession and not of title. The law will not allow one to violate the actual, open, and peaceable possession of another, and then justify the act on the ground of a belief that he had a better title. And the *quo animo* must be determined by one's acts, and not by his declarations. Collins was fully aware of the possession of plaintiff, and of his claim of title. His entry, to put the best construction upon it, was made to obtain an advantage in law over the plaintiff, and consequently not made in good faith. (*Shelby* v. *Houston*, 38 Cal. 410.) The plaintiff is entitled to judgment on the findings.

*Bartlett, Pratt & Bartlett,* for Respondents.

Plaintiff did not have actual possession sufficient to maintain the action. There are two kinds of possession known to the law—actual and constructive. Either may, perhaps, do in ejectment, or to put the Statute of Limitations in motion. But only actual possession will suffice in forcible entry and detainer. This distinction in cases should be kept constantly in view, and care should also be had not to confound the terms "adverse possession," "prior possession," and "actual possession." Thus, in ejectment, a prior possession might be sufficient, which fell far short of being actual possession. The question of its being an actual or a constructive possession might not arise, as either might be sufficient in such a case. So, a possession might be adverse, and put the Statute of Limitations in motion, which fell far short of actual possession. The Statute of Limitations has itself prescribed that a substantial inclosure shall constitute adverse possession; but nowhere in the statutes or decisions is it said that a substantial inclosure is sufficient evidence, or even any evidence, of actual possession.

The mere building of a fence and planting a few shrubs, and then abandoning the premises without any intention of making any other use of them at any definite period—the doing of these things for the mere purpose of thereby holding the premises, without any reference to any beneficial use of them—does not constitute such a possession, use, or occupation as is contemplated by the statute.

The entry was not forcible. No actual force, menace, or threat was used, either in the entry or detainer. Nor was the entry "unlawful," within the meaning of the law. To have been so, it must have been made with a wrongful intent, without any color of title, and *mala fide. (Dickinson* v. *Maguire,* 9 Cal. 46; *Thompson* v. *Smith,* 28 Cal. 527;

*Janson* v. *Brooks*, 29 Cal. 214; *Shelby* v. *Houston*, 38 Cal. 410.)

By the Court, WALLACE, J.:

This is an action of forcible entry and detainer. The case was sent to a referee to take the testimony and to report a judgment. He found the facts, and his conclusions of law therefrom, and reported a judgment for the defendants, which was, thereupon, entered. The lot in controversy is situated in the City of San Francisco, between Sutter, Post, Webster, and Fillmore streets. In November, 1868, the plaintiff built a fence, which, with the house and fence of the occupant of a lot adjoining this on the west, made a complete inclosure of it. This fence which he then constructed was built of redwood posts, three by four inches, set in the ground at proper distances, with three fence boards nailed thereon in the usual manner, and also a fourth board nailed on the top of the posts, forming a cap—the whole constituting a substantial fence about four feet high. After thus inclosing the lot the plaintiff caused some two dozen trees to be set out in line along two sides of it. He did not reside upon the lot, and had no house thereon. This state of things continued until about the middle of February, 1869, a period of between two and three months, when the defendants entered.

The first question to be considered is as to whether these facts establish in the plaintiff the peaceable, actual possession of the premises at the time the entry occurred. That his possession, such as it was, was peaceable, there is no doubt, for until the entry of the defendants, some two months after possession was taken, nothing had occurred to disturb it. Nor is there any doubt that it was actual in that sense which is contemplated by the statute of April, 1866, concerning forcible entries and unlawful detainers.

Residence upon the premises is not indispensable to their actual possession—nor is cultivation necessary—nor improvement, as contradistinguished from the erection of fences or substantial barriers, marking the line of the premises over which control is asserted. The subjection of the premises to the exclusive will and control of the possessor by means of the exercise, by him, of visible and notorious acts of dominion over them, constitute actual possession. The acts thus visibly and notoriously done upon and about the premises, and their present effect as excluding the interference of all other persons, are the evidences through which the actual possession is made to appear. These acts of possession will necessarily depend somewhat upon the nature of the premises appropriated; the character of the soil; the uses to which it may be applied; and, in a city lot especially, sometimes will depend upon its situation, as being near to or remote from a rapidly improving locality. In this case there was the erection of a substantial fence, connecting with the adjoining house and fence so as to form a complete inclosure, and the planting of ornamental trees upon the premises—this amounted to cultivation, suitable to a city lot such as this, as appropriate to such lot as the seasonable plowing and sowing of agricultural lands would be, and, as an act manifesting control over the premises, equally significant.

The first count of the complaint is for forcible entry and detainer, under the Act concerning forcible entries and detainers (Acts of 1865–6, p. 768), and the only question remaining to be considered concerns the character of the entry and detainer here, as being forcible or otherwise. The statute (section one) denounces all entries into premises, at the time in the actual peaceable possession of another, if made with violence and strong hand, whether such entry be by the actual breaking into the house situate on the premises, or by any kind of violence, or "circum-

stances of terror." Its aim is the conservation of the public peace, which it would prefer to the assertion of a mere private right, when made in such a manner as would be likely to provoke a breach of the peace.

The statute of this State now in force is evidently drawn with a design to avoid nice distinctions as to the amount of force necessary to constitute the entry a forcible one within its intent. "Circumstances of terror" accompanying the entry, no less than "violence," "strong hand," "breaking open doors," etc., are within the prohibition of the Act.

Here, the large number of men employed, the unusual time at which the entry was made, the hasty manner in which the possession was seized upon, the firing of small arms, etc., are "circumstances of terror," which leave no room to doubt that the entry was not of that peaceable character which the law permits to be made. No actual collision ensued in this instance, it is true, but the lawlessness of the conduct of Collins, the principal defendant, and of the other defendants who acted under his direction in making the entry, is not, on that account, less apparent. It tended strongly to produce a breach of the peace, and that it did not result in an actual collision is attributable to something else than to their deportment.

The judgment must be reversed, and the cause remanded, with directions to render judgment for the plaintiff upon the report of the referee, with costs of action, but without damages; and it is so ordered.

Mr. Justice TEMPLE did not participate in the foregoing decision.