## TODHUNTER et al. v. ARMSTRONG.

Sac. No. 316; May 31, 1898.

53 Pac. 446.

**Master and Servant.—One Who Takes Charge of Another's Ranch,** with the understanding that he is to receive for his services a certain sum per month, and, after paying from the gross proceeds the operating expenses, including his own salary, and deducting what was due for supplies and equipments furnished by him, to return the balance to the owner, and who does not agree to bear a part of any

loss which may occur, is merely a hired man, and not a tenant. A verbal understanding that he was to remain in possession of the property, and have a lien thereon till he was paid, is no defense to the owner's action for recovery of possession.

APPEAL from Superior Court, Glenn County.

Action by George F. Todhunter and others against W. S. Armstrong. From a judgment for plaintiffs and an order denying a new trial defendant appeals. Affirmed.

J. C. Ball for appellant; S. Millington, R. E. Hopkins and Hiram W. Johnson for respondents.

BELCHER, C.—Plaintiffs commenced this action in January, 1896, to recover possession of a tract of land in Glenn county, called the "Willows Rancho," alleging that they were the owners of the said land in fee, and entitled to the possession thereof, and that defendant in September, 1895, entered into and took possession of the said land without any right thereto, and without the consent of plaintiffs, and had wrongfully withheld the possession thereof from the plaintiffs. Defendant answered, and filed a lengthy cross-complaint, in which he set up facts which it is claimed entitled him to retain possession of the said property. The following facts, among others, are alleged in the cross-complaint: Long before February 1891, and up to the time of his death, in January, 1893, W. B. Todhunter, the father of plaintiffs, was the owner of the land described in the complaint, and other lands situate in Yolo and Sacramento counties, and also a large amount of personal property. He had employed defendant for many years, and there existed between them great confidence and trust. He resided in Yolo county, and in February, 1891, entered into an agreement with defendant, by which it was mutually agreed that defendant should remove to and take full charge of the said Willows rancho. He was to take with him certain horses, harness, wagons and farming implements, of the value of $535, which he then owned, and was to use the same, together with such implements and teams as Todhunter should furnish, in the cultivation and improvement of said land; to employ all necessary help, and furnish board for the men employed; to purchase such machinery and articles as might be needed, from time to time, on the rancho; and to sell the surplus produce, and

out of the proceeds defray expenses, and upon final settlement turn over the residue to Todhunter or his heirs. For his services and the use of his said property defendant was to retain out of the proceeds of the sales for himself $50 per month, and fifty cents a day for the board of each person employed on the ranch and boarded by him, and upon final settlement was to be paid $535, the value of the property furnished by him, and a small sum due from Todhunter to him at the time the agreement was made. No time was fixed when said venture should terminate, but it was understood and mutually agreed that defendant was to remain in possession of said property and have a lien thereon until he was settled with and paid. Under this agreement the defendant, on February 20, 1891, took possession of the said property, and continued in possession thereof until Todhunter died; and after his death the agreement was maintained by his heirs and representatives until this suit was brought. Both Todhunter and defendant performed all the conditions of the said agreement to be by them respectively performed, but no complete accounting or settlement was had between them prior to his death, or has since been had between the representatives of his estate and defendant. In September, 1893, the plaintiff George T. Todhunter was duly appointed by the superior court of Yolo county administrator with the will annexed of his father's estate; and in June, 1894, as such administrator, he filed in court an account of his administration, to which he attached a statement of the account of the defendant, theretofore rendered to him for allowance and payment, and asked to have the same heard and considered by the court in connection with his said account. Thereafter the matter came on regularly for trial before the court, and was submitted for decision, and "the court duly made and filed its decision, whereby there was found to be due and owing from the estate to the said Armstrong the sum of $1,732 for transactions had under said agreement between" certain dates named, and no part of this sum had been paid. In September, 1895, George F. Todhunter, as such administrator, procured and induced the court to make and enter of record its decree and judgment, distributing the estate of said decedent to his heirs and devisees, and discharging said administrator. The distribution was made in accordance with a written agreement made and entered into by all the

heirs entitled to share in the estate, and upon the representa-
tion that there were still outstanding claims against the es-
tate, but that all the claimants consented that a decree be
entered distributing the estate in the manner provided in
said agreement. The creditors of the estate, and particularly
this defendant, did not in fact consent that any decree of
distribution be then entered, and the representation that
they did so was false, and made for the purpose of defraud-
ing them and preventing the collection of their claims against
the estate. By the decree there was distributed to the plain-
tiffs herein the land here in controversy, together with a large
amount of other real and personal property, and it was ex-
pressly provided that all the indebtedness of the estate, ex-
cept a certain mortgage on lands in Yolo county, should be
assumed and paid by them. The prayer was that the plain-
tiffs take nothing by the action, and that defendant have
judgment against them for the sums alleged to be due him,
and that he have a lien, coupled with possession, on the land
described in the complaint for the payment of such judgment.
The plaintiffs answered the cross-complaint, denying most of
its material averments.

The case was tried by the court without a jury, and the
findings and judgment were in favor of the plaintiffs. From
that judgment and an order denying a new trial defendant
appeals.

At the trial the plaintiffs introduced in evidence the said
decree of distribution, and proved that fifteen days before
the action was commenced they served on defendant a writ-
ten demand for the possession of the said premises. The
defendant was then called as a witness in his own behalf, and
testified that since the twentieth day of February, 1891, he
had continuously resided on the land in suit; had cultivated
and improved the property, raised, harvested and disposed
of the crops each year, and such parts of the crops as were
not used on the ranch, for the ranch, had been sold and
accounted for; that he had full control of the property, and
paid the taxes and accounted for everything raised thereon;
and that he went upon the property, and took the control
and management thereof, under and by virtue of an agree-
ment made with W. B. Todhunter. He was then asked to
state fully what that agreement was. Plaintiffs objected to
the question, and to the admission of any evidence as to the

terms of the contract under which defendant claimed the right to hold possession, unless the contract was in writing; and the objection was sustained.

There is no pretense that the agreement sought to be proved was in writing; and, as pleadings are construed most strongly against the pleader, it must be assumed that the terms of the agreement, as set out in the cross-complaint, are as favorable to defendant as the facts would justify.

It is claimed for appellant that by the agreement the relation of landlord and tenant was created between the parties; that appellant became a tenant at will, and as such was occupying and holding the property when this suit was brought; that his tenancy could only be terminated by a written notice given by the landlord, to remove from the premises within a period of not less than one month, to be specified in the notice; and hence that this action could not be maintained, no such notice having been given: Civ. Code, secs. 789, 790; Code Civ. Proc., secs. 1161, 1162. Whether appellant was a tenant of the property or not is the controlling question in the case; for, if he was not a tenant, but only a general manager or superintendent, then the rulings of the court below on the admission of evidence, and the findings of the court based upon the evidence admitted, were all justified and proper. We fail to see how the agreement set out can be said to have created any relation of landlord and tenant between the contracting parties. It is true appellant was to, and did, have the full control and management of the farm, but for his services in so doing he was to receive only a salary of $50 per month. After paying from the gross products of the place the expenses of operating it, he was to receive no part of the residuum, and was to bear no part of the loss, if any loss should occur. In short, he was, in our opinion, simply a laborer or hired man, and was subject to be discharged at any time. Numerous authorities are cited by appellant relating to tenancy and partnership, but, as no tenancy or partnership is shown to have existed, they are not in point, and need not be specially noticed.

Some stress is laid on the words, "It was understood and mutually agreed that defendant was to remain in possession of said property and have a lien thereon until he was settled with and paid." But such an oral agreement would not

create a lien, and, if it did, would not constitute a defense to an action brought to recover possession of the property.

After a careful consideration of the case, we conclude that there is no valid ground for a reversal, and that whatever right appellant may have to recover the amount alleged to be due him must be asserted against respondents under the condition attached to the decree of distribution, that they should assume and pay all outstanding and unsecured debts of the estate. We advise that the judgment and order appealed from be affirmed.

We concur: Haynes, C.; Chipman, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.