[S. F. 3149.    In Bank.—May 31, 1906.]

FRANK S. KNOWLES, Respondent, v. CROCKER ESTATE COMPANY, and E. A. LEIGH, Appellants.

FORCIBLE ENTRY — ACTUAL POSSESSION OF PLAINTIFF — INCLOSURE OF LAND.—Where the plaintiff in an action for forcible entry had built fences which, with the fences then existing and a natural barrier, made a substantial inclosure, such inclosure, without any other act done indicating dominion, constitutes actual possession of the prem-

ises sufficient to protect it against the intrusion or interference of others.

ID.—ACTS CONSTITUTING FORCIBLE ENTRY.—Where the agent of the defendant entered upon the land in the actual possession of the plaintiff during his temporary absence, with a number of men acting under his direction and control, and proceeded to destroy plaintiff's fences, with such a display of force and accompanied by such instant acts and declarations as were calculated to intimidate the plaintiff upon his return to the premises from resisting their intrusion and maintaining his possession, such conduct constitutes a forcible entry within the purview of the statute.

ID.—RESULT OF DESTRUCTION OF FENCES—POSSESSION OF DEFENDANT— PERMITTED ENTRY OF PLAINTIFF TO REMOVE STONE. — Where the result of the destruction of plaintiff's fences was to make the tract previously possessed by plaintiff a part of a larger tract in the possession of the defendant, the mere fact that plaintiff was permitted to enter without objection to remove some stone from the premises, which was no detriment to defendant, does not warrant the claim that such removal placed the plaintiff in possession of the premises.

APPEAL from a judgment of the Superior Court of San Mateo County and from an order denying a new trial. George H. Buck, Judge.

The facts are stated in the opinion of the court.

Morrison & Cope, W. I. Brobeck, and George C. Ross, for Appellants.

Edward F. Fitzpatrick, and B. B. Newman, for Respondent.

LORIGAN, J.—This action was for forcible entry. Judgment was rendered in favor of plaintiff for a restitution of the land described in the complaint and for treble the amount of damages awarded by the jury, and from such judgment and an order denying the motion of defendants for a new trial this appeal has been taken.

The evidence shows that the land described in the complaint is a portion of a larger tract of about thirty-three acres in extent in San Mateo County, with a fence on the outside and with cross-fences thereon, which at the dates hereafter mentioned was in the occupancy of one Daly, as tenant of the defendant Crocker Estate Company. The defendant Leigh was the agent of said company.

In August, 1896, plaintiff brought an action against the Crocker Estate Company to quiet title to about seven acres of such tract, and the next month entered upon such larger tract while it was in the occupancy of Daly and built a fence along the eastern line of the tract described in the complaint and along its southerly line to a point where there was already standing a fence which extended in a northerly direction along all but a small portion of said west line, where there was a bluff. This bluff and these fences—the ones on the south, west, and east—formed an inclosure containing the land described in the action to quiet title, and in the complaint in this action, and upon which it was claimed the forcible entry by the defendants was made. The east and south lines of fencing built by plaintiff amounted to about 1,850 feet in length, occupied some twenty or twenty-five days' work in building them, and no one interfered with plaintiff while he was having them constructed. The tract inclosed, except the extreme northern portion thereof, where there was an old quarry of about an acre in extent, was fertile soil, capable of being used, as it had been many years before, for agricultural purposes.

Immediately after building the fences, plaintiff, who lived about a quarter of a mile from the tract, commenced gathering and hauling away the loose rocks scattered about the land, which it was necessary to do in order to thoroughly prepare it for cultivation or for farming purposes. For that purpose he went upon the land every few days, and was so employed up to November 16, 1896. The rock taken off was used by him in filling a ditch near where he lived, but which had no connection with the land inclosed by him, and in repairing the road running down to the property. After the construction of the fences above referred to, Daly had no further occupancy or possession of the property described in the complaint in this action, and did not enter thereon, except, by permission of the plaintiff, to drive his cattle through gates left in the fences constructed by plaintiff so as to reach property of the Crocker Estate Company rented by him and located beyond the tract claimed by plaintiff.

About two months after the fences were built by the plaintiff, the defendant Leigh, acting on behalf of the Crocker Estate Company, having been informed of their erection,

employed a carpenter named Murray, and directed him to
go to the tract and tear down the fences erected by plaintiff,
and on the morning of November 16, 1906, Murray left San
Francisco for that purpose.  Murray had engaged seven men
to assist him, and they, together with the defendant Leigh,
met him on that day at a place appointed near the tract.
They entered it from the northern end thereof, driving in
with a light wagon with a single horse, without, as Murray,
the driver, says, being under the necessity of opening any
gate or breaking any fence (counsel for appellants state in
their brief on this hearing that they entered through an open
gate) or meeting with any obstruction or opposition.  They
carried with them pickaxes, shovels, crowbars, and hatchets,
reached the ground about noon, distributed themselves along
the fences constructed by plaintiff, and immediately com-
menced with these appliances, pulling them up and knocking
them apart, the material of which they were composed being
thrown into the highway.  In the forenoon of that day the
plaintiff and his brother had been engaged in hauling some
rock from the land, and at the time Murray and his men with
the defendant Leigh arrived had gone home to dinner.  While
the fences were being demolished, the father of plaintiff,
passing the premises on his way to town and hearing the noise,
went over to where the men were at work, and asked Leigh
by what authority he was destroying them.  Leigh answered
that he was advised by the attorneys for the Crocker Estate
Company to do so,—to tear the fences down and take posses-
sion.  The plaintiff and his brother returned about one
o'clock, and at that time the whole fence built by plaintiff
on the eastern and southern lines, except a small portion on
the southern line, had been removed.  They were then engaged
in tearing down this latter portion.  Plaintiff also demanded
of Leigh by what authority he was doing it, and was also in-
formed that he was doing it at the instance of the Crocker
Estate Company.  An Italian, who was passing by when the
fence was being thrown into the highway, and who had asked
permission of Leigh to take away the lumber, and had been
granted it, was proceeding to carry it away when plaintiff
came up.  Plaintiff told the Italian not to take the lumber,
when Leigh addressed the man, saying, "You take that lum-
ber away; if you don't I will have it burned."  Plaintiff told

Leigh he wanted it to replace the fence, to which Leigh responded, "If you build the fence there I will tear down all the fences you put up." Plaintiff remonstrated against the destruction of the fence, but no attention was paid to him, and the work of demolition continued until all the fence was destroyed. The plaintiff testified that Leigh's manner at that time was very impressive, and that when he told him he would tear down any fence that plaintiff might erect he was very firm in doing so, and the latter took him as though he meant what he said. When leaving, after the fence was destroyed, Leigh stated to plaintiff that if he built the fence again he would probably be instructed to come out and again tear it down. There was no quarrel between the plaintiff and Leigh; neither Leigh nor the men made any hostile demonstration towards plaintiff, and the latter invited none. The interview between Leigh and himself was gentlemanly and courteous. No attempt was made by plaintiff by force to prevent the destruction of the fences. He protested against their being taken down; that is, such portion of the south fence as was left when he arrived. Leigh ignored the protest; the destruction of the remainder of the fence by his men went on, with an express declaration on Leigh's part of his intention to destroy any other fence which might be built. Plaintiff testified that he did not rebuild the fences, because he thought it was useless to do so; that Leigh would have torn them down as fast as he rebuilt them; that his attorney told him not to rebuild them because of Leigh's threat to tear them down, and that upon the advice of his attorney he did not rebuild them; that as he had no fence to inclose the land there was no use in going on any further with his preparations of the land for farming purposes. The conversation between Leigh and the plaintiff appears to have been without the hearing of Murray and the other men, and took place at some distance from where they were at work, during which time Murray and they were engaged in removing the remainder of the fence, and upon its accomplishment Leigh and they left the scene.

The sections of the Code of Civil Procedure under which this action is maintained provide:—

"Section 1159. Every person is guilty of a forcible entry who either: 1. By breaking open doors, windows, or other

parts of a house, or by any kind of violence or circumstances of terror, enters upon or into any real property. . . ."

"Section 1172. On the trial of any proceeding for any forcible entry . . . the plaintiff shall only be required to show, in addition to the forcible entry . . . complained of, that he was peaceably in the actual possession at the time of the forcible entry. . . ."

In order to entitle plaintiff to recover, it was essential that the evidence should show that when the alleged entry was made he was in the peaceable and actual possession of the land described in the complaint, and that the entry complained of was made by defendants, accompanied by violence or circumstances of terror.

It is insisted by defendants that the evidence does not show the existence of either of these conditions, which are essential to a recovery.

As far, however, as the peaceable and actual possession of the plaintiff on November 16, 1900, is concerned, we think that the evidence, considered as the law requires it to be on this appeal, in a way most favorable to support the verdict, sufficiently establishes that it was.

The evidence shows that the fences built by plaintiff, with the fences then existing, and the natural barrier on the north, made a substantial inclosure which placed the premises described in the complaint in the exclusive possession of plaintiff. Thereafter he alone exercised acts of ownership and dominion over the tract so inclosed to the exclusion of both the Crocker Estate Company and its tenant, Daly. This was sufficient to constitute actual possession within the terms of the statute. It was not indispensable to actual possession that the plaintiff should have resided on the premises, or that he should have cultivated or improved them. Actual occupancy or cultivation or improvement is not requisite. An inclosure of land by fences or substantial barriers, or a combination of both, constitutes an actual possession of the premises without any other act being done indicating dominion. Such an inclosure is of itself a sufficient appropriation of the land to the visible and notorious use and control of the person making the inclosure so as to constitute actual possession, and to protect such possession against the intrusion or interference of others.

Our attention is not called to any case which holds that such an inclosure does not establish actual possession, while the authorities in this state (referring to such only as discuss the subject in its relations to actions of forcible entry) are uniformly to the effect that it does. (*Minturn* v. *Burr*, 16 Cal. 110; *Shelby* v. *Houston*, 38 Cal. 410; *Brumagim* v. *Bradshaw*, 39 Cal. 24; *Gray* v. *Collins*, 42 Cal. 152; *Goodrich* v. *Van Landigham*, 46 Cal. 601.)

The possession of the plaintiff being thus actual within the contemplation of the statute, there can be no doubt from the evidence but that such possession was entirely peaceable until it was disturbed by the entry of the defendants on November 16, 1900.

Nor is there any force in the other claim of defendants that the evidence shows that the entry upon the premises was accompanied by no such violence or circumstances of terror and ouster of the plaintiff from the possession of the land inclosed by him as warranted the maintenance of, and the judgment for, damages and restitution of the premises in this summary action of forcible entry; that at most the evidence shows but a simple trespass by defendants.

We are at a loss to perceive anything in the evidence upon which the idea that the conduct of defendants amounted to but a simple trespass can be predicated. The avowed purpose of the agent, Leigh, in entering upon the inclosure was to break down plaintiff's fences and take possession of the land which they inclosed. That is what he declared he was instructed to do, and which he did, and he entered directly upon the premises as inclosed by the plaintiff to do so. He entered at an hour when plaintiff was absent at dinner, with the strength of combined numbers, and with implements as equally available for repelling any resistance as for destroying the fences. He came in force with sufficient men to work rapidly, and when plaintiff, coming on the scene after most of the fence had been removed, protested against further destruction, his protest was ignored, and, in a way which plaintiff declares impressed him that Leigh meant what he said, the latter declaring that any fence which plaintiff might further erect he would also destroy. It is true that plaintiff made no physical effort to prevent the destruction of the fence; there was no personal collision, and no threats made save as above

stated. But it was not necessary that the plaintiff should have resisted their destruction of his property to the extent that some act in breach of the peace should have been committed. He was not required to offer resistance to their actions in order to demonstrate by possible physical injuries inflicted upon him the forcible character of their entry upon the premises. It must have been obvious to plaintiff as a reasonable man that to have offered resistance against such a force as confronted him would have only precipitated a conflict which would have resulted in a breach of the peace, the very thing the Forcible Entry Act was intended to prevent. The natural impulse of one who finds his property being invaded or destroyed is to endeavor to prevent it, and this he will naturally do unless awed by the manner of invasion or apprehensive of violence in the attempt to prevent its destruction. In the case at bar the jury had a right to find from the evidence that the entry was made in such a manner and with such attendant circumstances—the display of a strong hand and determined purpose upon the part of Leigh and his men to destroy the fences and resist any attempt to prevent their doing so—as impressed the plaintiff with a fear of violence should he endeavor to assert his rights to prevent their action. When a person enters upon land in the actual peaceable possession of another, with a number of men acting under his direction and control, with such a display of force and accompanied by such instant acts as are calculated to intimidate the occupant from resisting their intrusion and maintaining his possession, such conduct is sufficient to constitute a forcible entry within the purview of the statute.

There is little, if any, difference in the facts stated in the case of *Ely* v. *Yore,* 71 Cal. 130, [11 Pac. 868], and those in the case at bar. In that case, upon the subject which we are now considering, the court says: ''The code expression of an entry by 'violence or circumstances of terror' is the equivalent of the English statutory law expression of an entry 'with strong hand and a multitude of people.' To constitute such an entry under either law, it is not necessary that it should be accompanied with tumult or riot directed against the person of the party in possession. It will be sufficient if it is attended with such a display of force as manifests an intention to intimidate the party in possession or to deter

him from defending his rights or to excite him to repel the invasion of his possession, and thus bring about a condition of things which the law was intended to prevent and punish; namely, acts tending to excite a breach of the peace. Where an entry is made with such a display of force accompanied by destruction of property upon the land on which the entry is made it is a forcible entry. . . . It is conceded that the plaintiff was in the actual or peaceable possession of the premises upon which the defendants at an unusual time and with a large number of men entered by tearing down the fence, and removing its material to another part of the land. Such acts were more than a trespass. (*Gray* v. *Collins,* 42 Cal. 152; *Brown* v. *Perry,* 39 Cal. 23.)

"The fact that the defendant did not personally remain in possession of the land upon which he entered with violence does not affect the character of his entry. He was legally adjudged guilty of a forcible entry."

The case of *Gray* v. *Collins,* 42 Cal. 152, 156, presents also a similarity of facts with the case at bar, and declares the same doctrine which was subsequently followed in the case from which we have just quoted. These are the two leading cases in this state on the point to which we have cited them, and in both cases it is held that evidence such as is presented in the present case was sufficient to show a forcible entry. Other authorities in this state might be cited, but the law in its application to such a kindred state of facts as is presented here is so clearly stated in both the cases referred to as to make these citations unnecessary.

In this same line of alleged insufficiency of the evidence to show that a forcible entry was made, it is claimed that it does not appear that the defendants took or remained in possession of the premises which were inclosed within plaintiff's fences, after such fences were destroyed. Without discussion whether such a showing under subdivision 1 of the section relied on by plaintiff was at all necessary, it is sufficient to say that the avowed intention of Leigh, as the evidence discloses, was that he went there to remove the fences and take possession of the inclosed land and that he accomplished the latter when the fences were destroyed, and as necessarily incident to their destruction. The inclosed tract of seven acres, before its segregation by plaintiff's

fences, was part of a larger tract of thirty-three acres. The effect of destroying plaintiff's fences was to put an end to plaintiff's exclusive control and dominion over this seven-acre tract and to put it thereafter in possession of defendants as part of such thirty-three-acre tract by reason of the fences which they had around this larger tract. The fact that plaintiff entered as he did upon the land after the fencing was destroyed and took away some stone which he had dug out for use on a road before the fences were destroyed, and that defendants did not oppose his doing so, did not show that the plaintiff was still in possession. It only tended to show that defendants did not consider this action on the part of plaintiff as interfering with their possession of the land as now part of the larger tract, and as the removal of the stone was no detriment to the land, but a positive benefit, they were not adverse to its removal.

These are the principal points urged upon this appeal, as grounds for a reversal and concerning which we deem particular consideration necessary. Additional points are also presented which, however, we do not think are of sufficient importance to merit any particular mention.

We perceive no error in the record which would warrant a reversal, and the judgment and order denying the motion for a new trial are therefore affirmed.

Shaw, J., Angellotti, J., Henshaw, J., Sloss, J., and McFarland, J., concurred.

Rehearing denied.