No. 27,984.

IRVING HILL, PAUL A. DINSMOOR, HORTENSE B. HILL, MARY B. DINSMOOR; and JUSTIN D. BOWERSOCK, IRVING HILL and PAUL A. DINSMOOR, Trustees, Doing Business as THE LAWRENCE PAPER MANUFACTURING COMPANY, *Appellants*, v. L. CLYDE BROWNING, ROBERT A. SPHARR et al., *Appellees*.

(273 Pac. 448.)

Opinion filed January 12, 1929.

*C. A. Smart,* of Lawrence, and *J. D. Bowersock,* of Kansas City, Mo., for the appellants.

*Edward T. Riling, John J. Riling* and *Walter G. Thiele,* all of Lawrence, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: This controversy involves the right to possession of a portion of a levee at Lawrence. Plaintiffs, through their grantors, claim to have had possession of the land in controversy for forty years through a contract with the city of Lawrence executed in 1872; defendants claim, through adverse possession for more than

fifteen years, and a license from the city of Lawrence executed in 1923, to operate a sand plant. The plaintiffs sought to enjoin the defendants from entering upon or operating on the land, were defeated and appeal.

The record shows substantially that in 1872 the city of Lawrence leased a portion of the levee situated on the south bank of the Kansas river, from Massachusetts street to New York street (with certain exceptions), to Orlando Darling upon condition that he erect and maintain a dam across the Kansas river, and water power thereon and adjacent thereto. In 1873 this lease was assigned by Darling to the Lawrence Land and Water Power Company. The original lease was modified in some respects in 1875. In 1879 the title and rights of the Lawrence Land and Water Power Company were conveyed to J. D. Bowersock. At that time the dam had been constructed, the water-power machinery installed, a flour mill built, and between that time and 1890 a warehouse, grain elevator and several other buildings had been erected upon the leased property by Bowersock and persons holding through or under him. These buildings, except a small pumping station, were all located east of Massachusetts and west of Rhode Island streets. The tract in controversy is east of Rhode Island street. The plaintiffs, through Bowersock, have since 1908 been occupying the property east of the flour mills and south of the Santa Fe railroad tracks which cross the levee from east to west. There were also constructed and in use by them, for the purpose of securing necessary water, a pump house and several wells just west of New York street between the Santa Fe and the river bank. These were on the property now in controversy, as were also wires and a pipe line connecting them with the paper plant. In 1912 the plaintiffs moved into a large building erected sometime about 1890 by the Consolidated Barb Wire Company, north of the Santa Fe and just west of Rhode Island street. This they have since occupied with other buildings, in the conduct of their business. In 1915 a concrete pump house was built practically on the west line of New York street on the land in controversy, and is connected with the plant by an underground pipe line and by an electric power line which furnishes power to run the pump. Bowersock died in 1922, his rights passing by will and by agreement to a portion of the levee, including the property in controversy, to the plaintiffs. The tract claimed by the defendants

involves a portion only of that claimed by the plaintiffs. It is a portion of the south bank of the Kansas river north of the Santa Fe right of way, east of the extended east line of Connecticut street and west of the extended west line of New York street. There was testimony showing that various and sundry· parties had intermittently removed sand from the river at or near the vicinity of the property in controversy, during a period of perhaps twenty years, but no question appears to have been raised as to the title claimed under the Darling lease and no substantial adverse possession asserted by anyone previous to the present controversy. The evidence is indefinite, for the most part, as to just where these various parties operated. It may or may not at times have been on the property in controversy, but in any event no connection appears between them and the defendants which could be said to constitute a continuous or adverse possession. On the other hand, during all the time mentioned the holders under the original Darling lease had, by actual construction of buildings and the installation of wells, pipe and power lines, actually and practically used the ground. They installed, repaired and altered these appurtenances to their plants and moved the wells from place to place as the conditions of their business required.

In December, 1924, the defendants began moving materials upon the land in controversy west of New York street for the erection of a tower to be used in removing sand from the river. Attention of the plaintiffs· was drawn to such activity and the defendants were asked to desist. They continued, however, and in January, 1925, another warning was given. The plaintiffs then erected a barbed-wire fence substantially on the west line of New York street extended from the north line of the right of way of the Santa Fe to the concrete pump house above mentioned and from there to the river. Defendants cut this fence and again came upon the land. It was repaired by the plaintiffs and the defendants again threw it down. The plaintiffs sent men to the premises in controversy with instructions to remove the materials and keep defendants off. The defendants interfered forcibly with the removal, and plaintiffs' employees withdrew to avoid a physical encounter. This action was then instituted and the defendants temporarily restrained. Trial to the court resulted in judgment for the defendants.

It is agreed that the title to the land is not in dispute. The de-

fendants contend that the issue was one of fact, was found in their favor on disputed evidence and that the judgment of the district court is conclusive; that the Darling lease is void, being a violation of the rule against perpetuities, and that those claiming under the Darling lease failed to comply with its terms and conditions and abandoned it.

We cannot sustain defendants' contentions. The lease from the city of Lawrence to Orlando Darling which passed to his successors constitutes a color of title under which it appears plaintiffs and those under whom they hold have exercised possession of the land in controversy for many years. Even a void deed is sufficient color of title upon which to base possession of real estate. In 2 C. J. 169 it is said:

"A claim asserted to property under the provisions of a conveyance, however inadequate to carry the true title to such property, and however incompetent may have been the power of the grantor in such conveyance to pass a title to the subject thereof, is strictly a claim under color of title."

This court has said:

"Although the deed under which he claimed was void, it afforded color of title." (*Goodman v. Nichols,* 44 Kan. 22, 29, 23 Pac. 957.)

Under this color of title plaintiffs and those under whom they claim have been in possession of the premises in controversy for more than forty years. The use of the land for wells, pumps, pipe line and electric lines was an actual occupation thereof. Actual possession is a possession of the character required by the nature and situation of the land. (*Allaire v. Ketchum,* 55 N. J. Eq. 168, 35 Atl. 900.)

"Possession is actual when there is an occupancy according to its adaptation to use." (*Morrison v. Kelly,* 22 Ill. 610.)

"By actual possession . . . is meant that he shall be in actual use and enjoyment of the land for such purpose as it is capable of and not that he shall be actually present at the time." (*State v. Newbury,* 122 N. C. 1077, 29 S. E. 367. See, also, *Felber v. Ausenhause,* 19 Ariz. 594.)

In the instant case the plaintiffs have for years used the land for such purposes as it was adapted to and as they required in their business. Needing water for their boilers and the manufacture of paper, they caused wells to be driven on the premises, a pump and motor to be installed in a pump house, and proper pipe and electric lines constructed over the premises to the plant. The wells had to

be moved and were moved from time to time; the motor and pump and lines required attention. Plaintiffs' employees must go and did go over the premises to attend to these things. Clearly the use made by plaintiffs of the land in question was such as is adapted to the character of the land, was appurtenant to the plants actually operated by them upon the western portion of the lease, and was of a nature to require a constant dominion over the premises. Moreover, the fence erected by plaintiffs prior to the actual entry of defendants was of itself sufficient to constitute a practical inclosure of the entire tract, and to preserve the actual possession of the plaintiffs. The railroad right of way on the south, the river on the north, the plants of the plaintiffs on the west, and the fence on the east, completely surrounded the land. (See *Knowles v. Crocker Estate Co.*, 149 Cal. 278, 86 Pac. 715; *Hammond v. Doty*, 184 Ill. 246, 56 N. E. 371.)

"The general rule is well settled that where a person enters, under color of title, into the actual occupancy of a part of the premises described in the instrument giving color of title, his possession is not considered as confined to that part of the premises in his actual occupancy, but that such occupant acquires possession of all the lands embraced in the instrument under which he claims." (2. C. J. 235. See, also, *Goodman v. Nichols*, 44 Kan. 22, 23 Pac. 957; *Smith v. Gale*, 144 U. S. 509, 526.)

The Darling lease and the subsequent transfers cover the entire river bank from Massachusetts street to New York street, and even disregarding the actual use made of the premises east of Rhode Island street, the erection of buildings and operation of plants on the western part of the leasehold established a possession of the whole. We are of the opinion that the plaintiffs are correct in a contention that the defendants attempted a forcible entry. The plaintiffs already had the requisite possession under the lease. The defendants began moving materials on in December, 1924, and persisted after two warnings by plaintiffs to desist. Then plaintiffs erected a barbed-wire fence, which defendants cut and threw down. Plaintiffs repaired the fence and defendants again tore it down. Plaintiffs then sent men to remove the materials and keep defendants off, and were threatened by defendants with force. The mere cutting and throwing down of a fence has been held to be sufficient to constitute a forcible entry. (See *Campbell v. Coonradt*, 22 Kan. 704, 706; *Doty v. Cone*, 85 Kan. 1, 115 Pac. 977.) In the latter case this court said:

"It is admitted by the defendant in his testimony that shortly before the commencement of the action the plaintiff had the property in controversy in-

closed with a post-and-wire fence, and that he—the defendant—went upon the land, tore down the fence and took possession of the property. This constituted a forcible entry." (p. 3.)

We are not overlooking the evidence of prior sand-dipping operations on or near the premises in controversy, but the individual cases were not connected one with another so as to constitute adverse possession, nor was there privity between them and the defendants. Therefore no defense could be predicated upon their acts by the defendants. We conclude that plaintiffs, having been in possession under color of title for a long period of years, were entitled to have such possession protected against the defendants, and were therefore entitled to an injunction as prayed in their petition.

The judgment is reversed and the case remanded with directions to grant the injunction.

DAWSON and HARVEY, JJ., dissenting.