[Civ. No. 15200.   First Dist., Div. Two.   Mar. 27, 1953.]

VERA EICHHORN, Respondent, v. SALLY DE LA CANTERA, Appellant.

Henry J. Kleefisch for Appellant.

Jerome L. Schiller for Respondent.

GOODELL, J.—This is an appeal from a judgment in an action for damages for forcible eviction and conversion. The verdict was for $3,300 compensatory, and $500 punitive damages. A new trial was denied.

Appellant owned a dwelling house at 1379 41st Avenue in San Francisco in which she conducted a carpet cleaning business. In November, 1949, she went on a vacation trip to South America and before leaving entered into an agreement with R. H. Eichhorn, who was then respondent's husband, whereby he was to carry on the business during her absence. As part of this arrangement he was to have the occupancy of the furnished home wherein the business was to be carried on, and the use of appellant's Cadillac.

The Eichhorn family moved into the place with their furniture and personal belongings and lived there for about three months. This litigation arises out of respondent's dispossession on February 21, 1950.

As part of the arrangement the Eichhorns were to keep up the monthly payments of $57.25 principal and interest on the mortgage and to pay the monthly gas and electric and water bills. This was done.

Appellant returned from her trip on January 21, 1950, and on February 7 received the following letter:

"Dear Mrs. Cantera:

"As per our agreement, before your departure to South America, I am relinquishing back to you, your home, 1379-41st Ave., your business, Kelly Carpet Cleaning System, located at 1379-41st Ave., and your Cadillac automobile.

"I wish to thank you sincerely for the opportunity and assistance that you have given to Mrs. Eichhorn and myself.

> Very truly yours,
> R. H. Eichhorn
> 426A-24th Ave.
> San Francisco, Calif."

Eichhorn never thereafter lived at the 41st Avenue home but respondent and her 16-year-old son remained therein.

On February 8th the Eichhorns separated and nine days later respondent sued for divorce on the grounds of desertion and extreme cruelty. At the time of the trial of this action an interlocutory judgment had been entered in the divorce case.

Although Eichhorn signed the formal relinquishment on February 7th, appellant testified that he worked on through March and into April winding up unfinished business.

The evidence shows that on the afternoon of February 21st while respondent was at work and her son at school appellant reentered the house by forcing the garage doors. Appellant's answer admits that she broke into the house. The evidence also shows that she had arranged for two men to go there that afternoon to move the Eichhorns' furniture from the upstairs living quarters to the basement, which they did, and that she removed the clothing of respondent and her son from the upstairs rooms to a closet in the basement apartment where she hung them up. It shows, further, that on that day when the son returned from school and respondent returned from work they found appellant in possession. Two police officers responded to a call by respondent and their testimony shows that although both appellant and respondent were excited, there was no physical altercation and the officers ruled that it was a civil dispute, not a police problem, and retired. Appellant testified that she told respondent that she and her son could stay that night and occupy an apartment in the basement, while respondent testified that she was told by appellant that she did not care where respondent stayed that night but that it could not be on those premises. Later the same evening respondent's son and son-in-law called and got some clothing and blankets, and respondent and her son stayed that night in her daughter's home, where respondent slept on a mattress on the floor and the son slept on a davenport, which arrangement continued for two or three weeks until respondent found an apartment.

Appellant's answer alleges that after Eichhorn "had removed from said premises and had relinquished and restored the same to defendant" the lock on the front door was changed by respondent "and because defendant was unable to enter, and was prevented from entering said premises by reason of said wrongful and unauthorized change of lock and malicious conduct on the part of plaintiff, it was necessary for her to, and *she did, break into her said home and premises, as this defendant had the full right to do,* and which act is the act complained of in the plaintiff's complaint." (Emphasis added.)

This plea in justification of appellant's entry without recourse to legal proceedings is based on the contention, which is appellant's principal point on appeal, that respondent's

occupancy was not that of a tenant but merely that of a licensee or even a trespasser.

In this connection it appears without dispute that there was an understanding that the Eichhorns were to pay the $57.25 monthly on the mortgage and the utility bills as well. From this the jury could have concluded that the total of these sums was intended by the parties as monthly rental. In addition to that, appellant wrote Mr. and Mrs. Eichhorn on February 5 saying: "but as you know the rent on the house at present does not even cover expenses, such as taxes and insurance, much less repairs, etc., where the house really should produce an income of not less than $75.00 per month." In that letter she called for possession on February 22d. Three days later appellant wrote respondent: "I wish to occupy that house, and unless you and Mr. Eichhorn begin to pay the sum of $150.00 per month, as of February 15th, it will be necessary for me to secure the house through legal procedure." On February 13th appellant wrote respondent: "As for the house, I shall occupy it on the 22nd of February, and you may ask any attorney you desire, and he would advise you that all is required is three days, since there is back rent due from you."

Respondent testified that "we were to pay the bank loan as rent. We paid all the utilities." Appellant testified that these payments were not "rent," and gave the explanation that when she used the term "rent" she did so only as a figure of speech.

This evidence pro and con, left the question as one of fact for the jury to decide, and the verdict implies the finding that the payments were rental and hence that the Eichhorns were tenants, not licensees.

But wholly aside from that, it is well settled in this state that an owner cannot forcibly reenter without having recourse to legal processes. The reason for the rule is that such forcible action tends to a breach of the peace.

As early as 1859 the Supreme Court declared in *McCauley* v. *Weller*, 12 Cal. 500, 524, that the object of the forcible entry law was "to prevent the disturbance of the public peace, by the forcible assertion of a private right." And the court said, also: "Questions of title or right of possession cannot arise . . ." A few years later in *Mitchell* v. *Davis*, 23 Cal. 381, 384-385 the court said: "One great object of the Forcible Entry Act, is to prevent even rightful owners from taking the law into their own hands and attempting to recover, by

violence, what the remedial process of a Court would give them in a peaceful mode." *Voll* v. *Hollis,* 60 Cal. 569, 573-574 follows both the McCauley and Mitchell cases. In the early case of *Brown* v. *Perry,* 39 Cal. 23, 24, the court said: "The law prohibits a forcible entry, *even by the person entitled to possession,* for the reason, among others, that *it necessarily tends to a breach of the peace.*" (Emphasis added.) See, also, *Knowles* v. *Crocker Estate Co.,* 149 Cal. 278, 285 [86 P. 715] and discussion in 12 California Jurisprudence page 595 et seq.

Even in cases where a landlord's right of reentry in case of default is expressly reserved in a lease, it has been held that he cannot reenter by force (*California Products, Inc.* v. *Mitchell,* 52 Cal.App. 312, 314 [198 P. 646]; *Calidino Hotel Co.* v. *Bank of America,* 31 Cal.App.2d 295, 306 [87 P.2d 923]; *Igauye* v. *Howard,* 114 Cal.App.2d 122, 125 [249 P.2d 558]).

The absence of the occupant from the premises at the time does not make the entry any the less a forcible entry (*Ely* v. *Yore,* 71 Cal. 130, 133 [11 P. 868]).

The reason for the rule that a person cannot take the law into his own hands is just as applicable in an action such as this, for damages for forcible eviction (see *Gilbert* v. *Peck,* 162 Cal. 54, 59 [121 P. 315, Ann.Cas. 1913C 1349]), as it is in actions for forcible entry. (Code Civ. Proc., § 1159.) In both instances the gist of the action is force.

Appellant assigns as error the refusal of the following instruction: "A licensee on land of another has no right or authority to change locks on structures standing on the land, unless permission is granted by the owner, to so do." No authority is supplied in support of such an instruction but, moreover, respondent was not being sued for changing the lock; *appellant was being sued* for forcing her entrance into the place.

Error is claimed in the refusal of an instruction that "If a licensee occupying real property without permission changes the locks on the structures on the land so as to exclude the owner, the owner may break in peacefully and regain the entry to the property and in so doing commits no wrong and is not answerable in damages to the licensee." The admission in appellant's answer shows that she did not "break in peacefully." Not only is there no authority cited for this instruction, but its pronouncement that "in so doing commits no wrong" runs counter to the authorities already cited.

■ Error is assigned in the refusal of an instruction that "A licensee is one to whom authority is granted to do an act or acts on the land of another without having an interest therein. And a licensee's right is merely permissive as long as the permission lasts." Appellant argues that the failure to give this deprived the jury of the opportunity to determine whether respondent was a tenant or merely a licensee. The failure to so instruct could not have been prejudicial error since appellant's admission of record that "she did break into her said home and premises" shows a forcible entry, and such entry, under the cases cited, would have been just as unlawful against a licensee as against a full-fledged tenant or a lessee whose lease contained a provision giving the landlord the right of reentry.

Appellant cites *Cook* v. *Klenk*, 142 Cal. 416 [76 P. 57] and *Todhunter* v. *Armstrong*, 6 Cal.Unrep. 27 [53 P. 446]. In both cases the defendant claimed a landlord and tenant relation existed which entitled him to a longer notice than the owner had given, a question not presented herein. In neither of them did the owner forcibly enter or evict the occupant but in both of them invoked the orderly processes of the law and sued for possession. They are not in point.

On the theory that the Eichhorns' possession was merely incidental to the employment, several authorities are cited.

■ In 32 American Jurisprudence page 37 the statement is found that "If a person occupies premises belonging to his employer as a part of his compensation, he has no right to continue his occupation of the premises on the termination of his employment . . ." Nobody will question that statement.

The first answer is that appellant testified that Eichhorn's services did not really terminate until some time in March or April. It is true he wrote the letter of relinquishment on February 7 and never personally occupied the house after that, but it is undisputed that there was unfinished business which he had to wind up. ■ Secondly, even under appellant's employment argument it has been held that an employee with the right to live on his employer's property cannot be evicted by force but only by legal process.

In *San Francisco & Suburban Home Bldg. Soc.* v. *Leonard*, 17 Cal.App. 254, 262 [119 P. 405], the court said: "Indeed . . . if, under such circumstances, the plaintiff had forcibly driven Leonard from the premises and thus taken possession thereof, it would itself have been guilty of forcible entry, although it might transpire, as it has transpired, that, as a

matter of legal right, it was entitled to the possession. This proposition necessarily follows from the very theory upon which or the purpose for which the forcible entry and forcible and unlawful detainer statute is enacted, viz., to secure a *judicial* adjustment of differences of that character and thus prevent the parties themselves from redressing or attempting to redress their own wrongs which is likely to lead to serious wrongs against the public or society."

*Turner* v. *Mertz*, 3 F.2d 348 [55 App.D.C. 177, 39 A.L.R. 1140], cited by appellant, is not a California case. There it was held that damages were not recoverable by the wife of one of defendant's servants, for eviction from a cottage which they were permitted to occupy. The court held that since the terms of the contract of employment were not disputed, its construction was simply a question of law for the court. Defendant contended that the servant's family were tenants by sufferance, but such a tenancy was not proved.

In her reply brief appellant for the first time complains that the court erred in giving four instructions on the rights of a tenant, which point the respondent has had no opportunity to answer by brief because of this belated presentation. ■ It is settled that "an appellate court is not required to consider objections to instructions raised for the first time in an appellant's reply brief" (24 Cal.Jur. p. 854). However, we are satisfied that respondent was entitled to these instructions under her theory of the case. The appellant's real grievance is that these instructions on the rights of a tenant were given, while certain instructions on licensees, tendered by appellant, were refused (as already noted) but in this connection it should be pointed out that two instructions tendered by appellant were given which, in our opinion, were more favorable to her than the law required. They are quoted in the footnote.*

---

*"You are instructed that a person entitled to the possession of property with a right of entry to said property or lands unlawfully in the possession of another, may, during the absence of such occupant or in the presence of such occupant, peaceably and without force or violence enter said property; and having entered and obtained possession peaceably is not guilty of forcible entry or detainer for refusing to permit such occupant to enter thereafter.

"The jury is instructed that a person entitled to the immediate possession of real property has the right to enter upon his property to expel by force the intruder; and in so doing he is entitled to use all the force necessary to secure possession. Having the right of entry and exercising it, the owner would not be subject to an action for damages by one in wrongful possession, provided the owner used no more force than was necessary to dispossess him."

In these circumstances we repeat that there could have been no prejudicial error in failing to give the instructions on licensees.

Appellant also belatedly complains of the giving of three instructions tendered by respondent defining conversion and stating the rule of damages (Civ. Code, § 3336) therein. The second count of the complaint pleaded that appellant "took into her possession and under her control the said personal property aforementioned and converted the same to her own use." This was denied, but the evidence shows that the articles of personal property which appellant admittedly moved from the upstairs living quarters (with the exception of some clothing and blankets which respondent's son and son-in-law called for) were never returned to the respondent.

"Conversion consists in the unwarranted interference by defendant with the dominion over the property of plaintiff, from which injury to the latter results." (*Hull* v. *Laugharn*, 3 Cal.App.2d 310, 315 [39 P.2d 478], and cases cited; see, also, *Pearl* v. *Figoni*, 49 Cal.App.2d 662 [122 P.2d 385].)

The respondent was unquestionably entitled to these instructions.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.