WALLER
vs.
MORGAN.

---

18bm136
118  705  **Case 23.**

ORD. PET.

## Waller *vs.* Morgan.

APPEAL FROM SHELBY CIRCUIT.

1. To create the relation of landlord and tenant no particular form of words is necessary; but it is indispensible that it should appear to have been the intention of one party to dispossess himself of the control of the premises, and of the other to enter and occupy as the former had the right to do.

WALLER
vs.
MORGAN.

2. Where a lessee permits another to occupy a part of the house rented, retaining himself the control, there is no sub-tenancy, which would render such occupant liable to the landlord for rent.

3. The party upon whom the burthen of proof lies, is entitled to the conclusion in argument.

[The facts of the case appear in the opinion of the court. REP.]

*Throop & Brown* for appellant—

The proof shows that Dr. Guentz had rented Shelby College from Dr. Waller, and himself became president thereof, and that he associated with him in the management of said college, the appellee, Col. Morgan, as vice-president, and published to the world that the college would be under the joint control of Guentz and Morgan, as president and vice-president. Morgan's salary was to be $2,000, and the use of a suit of rooms in the president's house—a part of the college property rented; he kept a separate table, on his own account, &c.

The question for decision is, whether or not the property of Morgan is liable to the satisfaction of rent to Waller? We insist that it is, and refer the court to the case of *McGee vs. Gibson*, 1 *B. Monroe*, 105. Was not the possession of a part of the premises by Morgan, with the privilege given by Guentz to use and occupy them, a portion of the remuneration given by Guentz to Morgan for his services in the College, and is it not shown by Guentz himself, and is not the case analogous to that of *McGee and Gibson, supra?*

The court erred in refusing the instruction asked by Waller's counsel, marked No. 1. The facts upon which the instruction was predicated exist in the proof before the jury. It was abundantly proved that Morgan exercised all the control over the premises that an owner or renter could do. He and Guentz held themselves out to the world, by the printed pamphlet, as joint managers of the institution, and Morgan received the profits of the institution. He was not a boarder. What then was he? Nothing else but a tenant under Guentz, by his contract of employ-

ment, of that portion of the premises which he occupied, paying his rent in his services, as in the case cited of *McGee vs. Gibson, supra.* There can be no justice in permitting Morgan to escape responsibility.

*Thos. A. Marshall,* on the same side—

By the contract between Guentz and Morgan, the latter, as a compensation for his services as professor, was to receive an annual salary of two thousand dollars, with the occupation of such a room or rooms in the college as his office and duty of professor might require; and also, as part of his compensation, was to have the separate use and occupation of a distinct portion of the house, known as the president's house, which was divided from the other part of it by a passage running through the house, and was to have a kitchen, or the kitchen altogether; some four or five rooms to be occupied by himself and family and servants, as a separate domestic establishment, distinct from the family of Dr. Guentz and of the college. And this portion of the president's house was in fact occupied by himself and family and servants, as his and their residence, in which they had their own furniture, and all their own provisions, entertained their own guests, and appropriated the house, or that part of it in which they were, to their own uses and purposes, just as any other occupant, having no connection with the college as a literary institution might have done, if permitted to occupy the same portion of the house. Morgan's property was seized by Waller, the landlord, to satisfy rent in arrear from Guentz. The single question presented by this appeal is, whether the personal property of Morgan, found on the premises occupied by him, was subject to seizure under the distress warrant against Guentz, and under the statute? This depends on the question whether Morgan was a sub-tenant or assignee of Guentz, either as to the whole of the demised premises, or as to that part of the premises which he actually occupied.

The general facts are stated, but it is insisted that the particular facts, as detailed by the witness, show most clearly that Morgan had the unrestrained control of the premises where his family was located, as fully and as free from the control of Guentz as of any other person, and of course he was not a boarder, but a sub-tenant of Guentz; if limited to a shorter period than Guentz's lease on the premises—if for his whole term—then he was an assignee of that portion of the demised premises which he occupied, and if his interest, though not directly limited, was subject to a contingency which might terminate it, while that of Guentz still continued, he would still be either assignee or sub-tenant—the technical distinction between these terms being, that while the sub-tenant holds either a part or the whole of the demised premises for part of the term, the assignee holds either the whole or a part for the whole term yet to come. It seems impossible for the lessee to create in the demised premises a temporary interest to be held under him which does not make the holder either his sub-tenant or his assignee; and there is no reason to doubt that the legislature intended to include, under one or the other of these terms, the holders of all such interests derived from the lessee for years.

The case of *McGee vs. Gibson*, 1 *B. Monroe*, 105, shows that Morgan is to be regarded as the tenant, paying, by his services, a rent or return for his occupation of the premises. The difference between the cases is, that in the one referred to, the occupation being in part of the sum stipulated as wages, the monthly value of the occupation was necessarily fixed, but while in this the occupation being additional to the sum stipulated as salary, there was no necessity, for any purpose of the contract, that the value of the occupation should be fixed or estimated. In each case the rent was paid, and to be paid, in services; and in this case Morgan must have been either sub-tenant or assignee.

If these views are correct, the court erred in refusing the first instruction asked by plaintiff; or if there be any thing in the instruction which might justify its refusal, the verdict upon the facts, which there being no contrariety of evidence, the jury was bound to find, is contrary to law, and on this ground the verdict should have been set aside, and the court erred in overruling the plaintiff's motion for a new trial.

As it is believed that for these reasons, or one of them, the judgment must be reversed, it will only be suggested further that there is evidence conducing to prove, that by contract or arrangement between Guentz and Morgan, the latter acquired a joint interest and control in the entire property, and in the enterprize connected with it, which will doubtless be more fully developed on another trial.

*Thos. N. Lindsey* for appellee—

1. The first question for decision in this case is, was Morgan the sub-tenant of Guentz, the lessee of Waller, and occupying such relation to Guentz as under the *5th sec. Revised Statutes p.* 44, *title Landlord and Tenant*, made his property liable for rent? The negative of this proposition is insisted on by Morgan. Morgan was a teacher employed by Guentz, and under his control and direction, and having no right, by any agreement of underleting or undertenancy, to control the property, or any part of it, any more than a boarder at a hotel, or a college student to whom rooms had been assigned; he was not bound for rent either expressly or impliedly.

2. The only other question is in respect to the right of Morgan's counsel to conclude the argument of the case to the jury. As the burthen of proof devolved on Morgan to show his right to the property, he had the right to conclude the argument. The court told the jury that the burthen of proof was upon Morgan.

Judge STITES delivered the opinion of the court.

Waller, with the assent of the trustees of Shelby College, leased the college property, including the buildings, grounds, and all the appurtenances, to Guentz, who was to conduct and control the college as a literary institution, and superintend it as President. The lease was for five years, commencing on the 15th July, 1852, subject to the privilege of an earlier termination, and the rent $2,000, per annum, payable one-half semi-annually.

Guentz took possession of the property, and proceeded to organize the institution, and conduct it as president, with such professors and assistants as he deemed necessary, and chose to employ. Among others he employed Morgan, who acted as professor and vice president. By agreement with Guentz "Morgan was to have a fixed salary of two thousand ' dollars *per annum*, with the privilege of occupying ' such rooms in the President's house and college ' buildings as would accommodate himself and fam- ' ily, and answer his purposes as a professor." The number of rooms he was to occupy was not specified, except those to be occupied by his family and servants. Under this agreement Morgan commenced his duties as professor, occupying rooms as such, and separate apartments for family purposes, keeping a separate table and establishment for his family distinct from the college family, and so continued until 21st April, 1854. Guentz, as lessor and president, retained general supervisory control over the college property and college during the whole period.

Guentz being in default in payment of rent, Waller, on the 15th April, 1854, caused a distress warrant to be levied upon Guentz's property, and that of Morgan, claiming that the latter was a sub-tenant or assignee of Guentz, and liable for rent. Morgan replevied the property, and upon an issue in the circuit court the jury found it not subject. A new trial was asked for and refused, and Waller has appealed.

WALLER
*vs.*
MORGAN.

June 20, 1857

WALLER
vs.
MORGAN.

The main question arises upon the refusal of the court to give the following instruction asked for by Waller, viz: "If the jury believe, from the evidence, 'that Morgan occupied the premises rented by 'Guentz of Waller, keeping a separate establishment, 'separate table, kitchen, and servants, and that these 'rooms in the rented premises, and these privileges, 'were allowed by Guentz as a part of his salary as 'vice president or professor of the college, Morgan 'was a sub-tenant, and his property was liable."

1. To create the relation of land-lord and tenant no particular form of words is necessary, but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the control of the premises, and of the other to enter and occupy as the former had the right to do.

To create the relation of landlord and tenant no particular words are necessary but it is indispensable that it should appear to have been the intention of one party to dispossess himself of the premises, and of the other to enter and occupy as the former himself had the right to do, persuant to the agreement between them.

The employment by Guentz of Morgan, as a professor or teacher in the college, at a fixed salary, and with the privilege of occupying rooms in the president's house for his family and servants, and the entry and use by Morgan of such rooms, did not necessarily create the relation of landlord and tenant. Such relation might be inferred from these facts, in the absence of other facts and circumstances tending to show that the employer reserved general control and dominion over the apartments so occupied, and the right of enforcing, with regard to them, any general regulation prescribed for the management of the household. And when such rebutting facts exist, the question of intention to reserve such control and general dominion then becomes material in determining the relation of the parties, and has to be settled like every other question of fact by the weight of evidence.

The fact that the employee, with the permission of the proprietor, keeps up and maintains a separate establishment and table, though strengthening the inference afforded by the use of separate apartments, is yet not conclusive of the existence of the relation

of tenant, but may also be rebutted by other testimony showing that such separate establishment was, though separate, not independent of the proprietor's control, but consistent with his right of supervision and entry.

Here Guentz was the president and lessee of the college; was regarded as responsible for its successful conduct and management; had the right to select and nominate, and did select the professors and teachers, who were, in point of fact, his subordinates in the college.   They, as is usual in such institutions, had particular apartments allotted to them, and Morgan had the privilege of keeping a separate family establishment.   Guentz says he neither underlet any of the college property, nor parted with his control over it.   If so, he had the right, at any time, for the purpose of enforcing the observance of the disciplinary or police regulations of the college, to enter into the apartments occupied by Morgan or any other professor, even against their will.   A right incompatible with the rights of a tenant, or of the occupant of apartments independent of such control, but yet consistent with the facts as hypothecated in the instruction refused, which leaves out of view altogether the question as to the retention of such control by Guentz, and which, in that respect, was erroneous, and therefore properly refused.

The case of *McGee vs. Gibson*, 1 *B. Monroe*, 105, is by no means conclusive of this.   In that case McGee's right of general supervision and control over the house furnished Gibson was not attempted to be shown.   So far as the facts furnished in the opinion go, there was no restriction or limitation upon Gibson in the use of the house.   The retention of control and supervision by McGee was not in issue, and, for ought that appears, did not exist.   Gibson's dominion over it was complete during the period he was at work.   Here the control of Guentz over the premises was necessary, if not indispensable, to a proper discharge of his duties as President of the

WALLER
*vs.*
MORGAN.

2. Where a lessee permits another to occupy a part of the house rented, retaining himself the control, there is no sub-tenancy which would render such occupant liable to the landlord for rent.

institution, and he says he never parted with it; and whether he did or not was an important inquiry in this case, which did not arise in *McGee vs. Gibson.*

In view of the relation of the parties as president and professor, employer and employee, and the direct statement of Guentz that he did not part with the control of the premises, and also of the general facts of the case, we cannot say that Morgan occupied the relation of sub-tenant, or that of assignee, and was liable for distress, or that the finding of the jury should be disturbed.

3. The party upon whom the burthen of proof lies, is entitled to the conclusion in argument.

No error was committed in awarding the conclusion of the argument to Morgan's counsel, because, under Waller's instruction, the former had the burthen of proof.

Judgment *affirmed.*