**TURNER v. MERTZ et al.**

(Court of Appeals of District of Columbia. Submitted December 5, 1924. Decided January 5, 1925.)

No. 4111.

1. **Landlord and tenant ⬤180(3)—Plaintiff, who brought action as tenant for unlawful eviction, could not recover on theory of negligence.**

Plaintiff, having brought action for wrongful eviction on a theory that relation of landlord and tenant existed, could not recover on theory that defendants, in depriving plaintiff and her one year old baby of light, heat, and food under the circumstances shown by the evidence, were guilty of negligence.

2. **Landlord and tenant ⬤5(1)—Relationship between owner and occupant held that of master and servant, and not of landlord and tenant.**

Where owner refused to accept a person as tenant, but agreed that person might occupy house if he would perform certain services, the relation was that of master and servant, and not that of landlord and tenant, so as to give right of action for eviction without notice to quit, under Code, § 1221.

3. **Contracts ⬤176(1)—Legal import of contract as to terms of which there was no dispute was question of law for court.**

Where there was no dispute about the terms of a contract, the legal import was a question of law for the court, and not a question of fact for the jury.

Appeal from Supreme Court of District of Columbia.

Action by Gertrude P. Turner against Edward P. Mertz and others. Judgment for defendants, and plaintiff appeals. Affirmed.

F. B. Rhodes, of Washington, D. C., for appellant.

W. E. Richardson and W. M. Bastian, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

BLAND, Acting Associate Justice. The appellant was plaintiff and the appellees were defendants below, and will be referred to as such hereinafterwards.

This action was for the recovery of damages for the unlawful eviction of plaintiff from the premises on Broad Branch road, District of Columbia, occupied by plaintiff and her husband and owned by the defendant Edward P. Mertz.

Defendant Walter W. King leased of defendant Mertz the large tract of ground upon which was located the King home, and the nearby three-room cottage, which was occupied by plaintiff at the time of the execution of the King lease and during a period of several months prior thereto. The material part of the declaration is as follows:

"On the 5th day of November, 1919, while plaintiff's husband, John P. Turner, was in the lawful possession and occupancy of a bungalow on the lands of the defendant Edward P. Mertz, on Broad Branch road, near Pierce's Mill, in the District of Columbia, as tenant by sufferance, the said defendants, without said tenancy of plaintiff's husband having been terminated by notice to quit, unlawfully, wrongfully, and maliciously entered said bungalow in the nighttime, in the absence of plaintiff's husband, and drove plaintiff and her infant child out of said bungalow, and threw her and her husband's goods and personal effects out of said bungalow, and undertook to install the defendant Walter W. King in the possession of said bungalow, all of which was done in a rough and violent manner, to the terror, nervous prostration, mental anguish, shame, and humiliation of the plaintiff, and to her damage in the sum of $25,000."

Plaintiff grounds her action upon the failure of the defendant King to terminate the tenancy by a 30-day notice to quit, required by Code D. C. § 1221.

The bungalow in question was located on the road, approximately 150 yards from the King residence. The cottage was connected to the King residence by an extension telephone. There was no other house within a mile, except the King residence. Plaintiff's husband had taken the premises under a verbal agreement with defendant Mertz, in which agreement he was to pay for the use of the house $50 per month in services and was to receive $75 per month for taking care of the furnace, lawn, and garden, and superintending certain Italian laborers who worked on the place. Plaintiff's husband was to have and did have a garden.

Plaintiff's husband took possession of the bungalow June 9, 1919, and rendered the required services until September 15, 1919, when King took possession of the main residence. Plaintiff's husband, when King first arrived, asked King to rent the place for so much per month, money rent. Defendant King said he could not let plaintiff's husband have the place that way, but would be very glad for him to stay there if he would do certain chores there—attend the furnace and carry out the trash. Plaintiff's husband attended the furnace and kept the trash emptied for the Kings, but had employment

at the race track at Laurel, Md., and was on the premises only mornings and evenings.

On October 30, 1919, defendant Marie King, the wife of defendant W. W. King, telephoned plaintiff that she wanted them to get off the place the following morning, and shortly after this called up on two other occasions, stating to plaintiff that, if she did not get off the place, she (Mrs. King) would throw her off, and in said conversation threatened her with police interference. The police came three or four times, and advised plaintiff to move as soon as she could get a place, but told her that they had no authority to move her. Plaintiff endeavored to get another place, but failed to get it. On the following November 5th, defendants Mertz and W. W. King took plaintiff's furniture out of the bungalow and put it on the porch; defendants Emery and Mrs. King being present at the bungalow at the time. Mrs. King was seen with her hands on a chair on the porch. Defendant Emery is not shown to have had anything to do with the removal. She was a guest at King's home. Defendants removed all the furniture, except one chair, locked the bedroom door, put out the fire, and carried the stove out on the porch, cut off the telephone, took out the electric light bulbs, and left plaintiff alone with her one year old baby. They offered to take her to her mother. Plaintiff waited for the return of her husband. The temperature on this date ranged from 47 at noon to 43 at 9 o'clock in the evening, and there was a high wind all day.

Plaintiff, with her baby, had been to Columbia road and Eighteenth street, in the District, to get milk for the baby, as prescribed by a physician. Plaintiff had also been sick. When she arrived home, the kitchen stove, which was the only heating device in the cottage, had not yet been moved out. She lighted the fire and put the milk on to heat for the sick baby. Defendants poured water on the fire, and carried from the house the kitchen stove and all other furnishings and belongings of plaintiff, except one chair, in which plaintiff was seated with the baby. They threw her coat and the baby's coat out, and she put her skirt around the baby. They at no time otherwise offered her any indignity, nor made any threats, nor did they at any time touch her. While seated in the chair, and after the furniture had been moved, and after it became dark and cold in the house, plaintiff fainted, and remained in that condition until her husband came home between 7 and 7:30. She fainted the second time before being carried to the taxicab in an unconscious condition, in which unconscious condition she remained until she was nearing the residence of her parents on North Capitol street. A servant of the Kings, on her own initiative, secured an oil stove, which smoked, and took it to the cottage after dark, so that plaintiff could have heat to warm the milk.

It is further in evidence that plaintiff's husband paid the rental for the electric lights. Plaintiff's husband states that he at no time was told to get out of the property, but that his wife had informed him that the Kings wanted possession. He states that he did not have time to look for a house himself on account of his work, but that his wife continued to look for a place; that on the morning of November 5th he fixed the fire and removed the trash as usual; that he was at no time told to quit work; that he thought King's servant, Ada Marshall, telephoned for the taxicab. Plaintiff, as a result of her said experience on November 5th, was afterwards in a very nervous condition, was confined to her bed for a week, and had the services of a physician. Plaintiff testified that she saw Mr. King on the evening of the conversation with Mrs. King over telephone, and that he said, "Don't pay any attention to that; I will see about it when I go down; of course, you can't get off to-morrow;" that Mr. King at no time asked her or her husband to get out, nor at any time did he tell her husband that his work in connection with the furnace and trash was at an end.

At the end of plaintiff's testimony the court directed a verdict for the defendants, evidently upon the ground that the testimony showed that the relation of master and servant, and not the relation of landlord and tenant, existed between the defendant W. W. King and the husband, John B. Turner, and that therefore no notice to quit was necessary. It will be observed that the action is based solely upon the ejectment of the tenant by the landlord, which eviction is alleged to have been unlawful for want of notice. If plaintiff was entitled to recover at all, she was entitled to recover the damages only which resulted from the unlawful conduct complained of in her declaration. In this court it seems to be conceded by all parties that, if the evidence does not show the existence of the relation of landlord and tenant, the plaintiff could not recover, and that the court, in that instance, correctly directed the verdict for defendants.

[1] We think the conduct of the defend

ants who participated in driving the defenseless woman from her home, which resulted in her injury, was most reprehensible, and might not be excused in law, if presented under different circumstances. We can see little difference between a line of conduct which deprives a helpless woman and her one year old baby of light, heat, and food, under the circumstances of this case, and conduct which accomplishes the same result by physical force. But "the comprehensive principle that, whenever a person is placed in such a position with regard to another that it is obvious that, if he does not use due care in his own conduct, he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he thus finds himself," is not invoked by the pleadings in this cause as they were in Depue v. Flatau, 100 Minn. 299, 111 N. W. 1, 8 L. R. A. (N. S.) 485, and we are not disposed to here pass upon liability under any other circumstances than those at hand.

[2] We do not think the relation of landlord and tenant existed between plaintiff or her husband and the defendant W. W. King, and if murder had been committed in the eviction, a recovery for damages could not be had on a declaration based upon an unlawful ejectment of the tenant by the landlord. The master, speaking in a general way, has the legal right to evict his servant whose service is ended, and in doing so he may use such force as is necessary. Weisberg v. Cohen, 129 App. Div. 496, 114 N. Y. S. 138. If damages result from unjustifiable conduct connected therewith, it is clear that recovery cannot be had upon the theory that the eviction was unlawful for want of notice. In Tiffany on Landlord and Tenant, vol. 1, p. 334, is found the following:

"The decisions rather tend, however, to determine each case upon its own circumstances, by a consideration of whether the master retains control of the premises occupied by the servant, and in the majority of the cases the occupation is regarded as that of a servant and not of a tenant. There seems, indeed, according to a number of cases, to be a presumption that the occupation by a servant is in that capacity, in the absence of any showing of a distinct demise, and that seems to be a logical view of the matter so far as he has any duties in connection with the particular premises in reference to which the question arises, or in connection with land of which such premises form a part."

It has been held that a farm laborer, occupying a house on the farm, does so as a servant, and not as a tenant, McQuade v. George F. Emmons, 38 N. J. Law, 397; a teacher, occupying part of the school building, is a servant, and not a tenant, Waller v. Morgan, 57 Ky. 136; a domestic servant, occupying rooms in or near the house, is a servant, and not a tenant, State v. Curtis, 20 N. C. 363; a clergyman, occupying a parsonage, is a servant rather than a tenant, Church v. Froislie, 37 Minn. 447, 35 N. W. 260; that a janitor in a building, who occupies a portion of the building as an incident to his service, is a servant, and not a tenant, 24 Cyc. 880; that a servant, who lived in living rooms in the rear of a shop, was not a tenant, Weisberg v. Cohen, et al., 129 App. Div. 496, 114 N. Y. S. 138. In the Weisberg Case, supra, the court said: "When the contract for services was terminated lawfully, the right of occupancy ceased in the servant, and the right of possession was in the master, * * * and the master or owner of the premises would have the right to remove the occupant (his late servant) with such force as was necessary."

It may be that the evidence in this case does not satisfactorily show that the contract for services was terminated justifying an eviction; but, since this action is not by a servant against his master for removing him without terminating the tenancy, it could serve no purpose to discuss this phase of the evidence in the case at hand.

It is conceded that defendant King declined to rent the place to plaintiff's husband for cash at so much per month, but that he said that he would be glad to let him stay there if he would do certain chores. It is urged by plaintiff that this was a contract of rental, and that he was to pay the rent in work, and that the character of the payment should not determine the nature of the occupancy. We can conceive of a statement of facts where one paying rent in the nature of services to another for the use of his premises as living quarters, while performing the service, might not be regarded as a servant, so as to deprive him of the status of tenant. True enough, the tenant might pay his rent in merchandise, in professional service, or in menial service; but, if his use of the premises was connected with and incidental to his services, and if the occupancy of the premises was for the convenience of the service, then the relation of master and servant would exist. Also, we think, it is important, in the con-

sideration of this character of case, to inquire if the right to occupy the premises was granted in order to secure the services of the servant. The fact that the occupancy of the particular cottage in controversy was essential to the service desired, and its convenience to the service, and the lack of available living quarters for the servant elsewhere argue forcefully that the relation of landlord and tenant did not exist. When it is obvious, as it is in this case, that the occupancy of the cottage would not have been tolerated, but for the services, it seems clear, under the numerous authorities on the question, that plaintiff's husband was not the tenant of the defendant King.

It is alleged in the declaration that plaintiff's husband was a tenant by sufferance. Agreeable to our views expressed heretofore, the only way such a tenancy could exist in this case would be for the employee, after the termination of his service, to be permitted to remain in possession sufficiently long for a tenancy to be presumed from the new relationship. Alpine Township School District No. 11 v. Batsche, 106 Mich. 330, 64 N. W. 196, 29 L. R. A. 576. Since it is contended by the plaintiff that the service was never terminated until the day of eviction, this view of the case needs no further attention.

Plaintiff's husband had no possession apart from that of the possession of his employer, and his occupation of the premises was merely accessory to the more convenient performance of his duties. While the fact that plaintiff's husband paid the electric light bills, and other similar facts, if proven, might have some weight in a case where the contract between the parties was in dispute, it can have no bearing in this case, for the reason that there is no controversy about the understanding between them. Here the servant was to do certain work, and while so performing he was to occupy the premises without charge. His understanding with defendant Mertz, which was on a somewhat different basis, in no sense affects the relationship with defendant King.

The case of Doyle v. Union Pacific R. R. Co., 147 U. S. 413, 13 S. Ct. 333, 37 L. Ed. 223, relied upon by plaintiff, is not in point. The tenant rendered no service for the landlord.

[3] In this case, there being no dispute about the terms of the contract, the legal import of the same was, therefore, a question of law for the court to declare, and not a question of fact for the jury. Bowman v. Bradley, 151 Pa. 351, 24 A. 1062, 17 L. R. A. 213. Plaintiff's evidence did not support the declaration that plaintiff's husband was a tenant by sufferance, and the court properly directed the verdict for the defendants.

The judgment in this case is affirmed, with costs.