## GROUP HEALTH ASS'N v. SHEPHERD.
### No. 182.

Municipal Court of Appeals for the District of Columbia.

June 6, 1944.

H. Mason Welch, of Washington, D. C. (Welch, Daily & Welch, of Washington, D. C., on the brief), for appellant.

Arthur L. Willcher, of Washington, D. C. (W. E. Cumberland, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appeal by Group Health Association from a judgment entered on a directed ver-

---

dict for plaintiff in an action by one of its members to recover cost of surgery and hospitalization.

Appellant, Group Health Association, is an incorporated body organized for the purpose of securing and providing medical, surgical, and hospital treatments and other services for its members and their dependents. The Association has no capital stock and operates upon a non-profit, co-operative basis. Membership therein is limited to civil employees of the federal government.

Appellee became a member of the Association in May 1942. Before being accepted into membership he was required to answer certain questions on a medical history form. There he revealed that in 1938 he had an operation for tumor of the spleen. He was also subjected to an examination by an Association physician. This examination revealed a "slightly enlarged prostate gland."

Appellee was offered and accepted membership subject to a restrictive provision that he would assume any further expense for any condition resulting from the removal of the tumor referred to. No restriction was imposed in connection with the prostatic condition.

Five months after admission into membership, appellee required treatment of his prostate gland. An Association physician gave him several examinations and treatments, advised him that surgery was indicated, and for that purpose referred him to a Dr. L. M. Mason.

On the ground that the condition pre-existed membership (a fact which is not disputed) the Association refused to provide surgery or hospitalization or to bear any part of the costs thereof.

The operation was performed by Dr. Mason under direct contract with appellee, at a charge of $250. (His fee would have been $75 if the Association had engaged him.) The total cost of operation, hospitalization, and incidentals was $587.50. Appellee made his claim against the Association for that amount and it was rejected by the Medical Director. The Director was overruled by the Claims Committee which held that "the claim should be paid because possible need for a restriction was noted during the entrance physical examination and no restriction for the condition was imposed." The Board of Trustees in turn overruled the Claims, Committee and made its final rejection on the basis of Article IV, Section 15 of the by-laws which provides:

"All persons becoming members of the Association will reimburse the Association during the first ten months of membership for the cost to the Association of all services procured for them or their dependents in connection with (1) ailments present at admission, * * *."[1]

---

[1] Other by-laws having a bearing on the claim are Article IV, Section 5, which provides in part as follows: ·

"The contract or contracts to be made by the Association on behalf of the members thereof with physicians, as provided in Section 5, Article VII, or with others, shall provide for the following services to members: medical and surgical examinations and treatments, including service for refractions of eyes, laboratory tests at the clinic, x-ray examinations at the clinic, surgical operations and confinement cases; professional consultations; ambulance facilities; house calls; and hospitalization in a semi-private (two-bed) room, * * *."

Article IV, Section 11: "The extent to which medical service relating to the foregoing items shall be furnished to any member or dependent shall be determined and prescribed by the Medical Director or his representative in each individual case. In the case of applications not otherwise generally acceptable by reason of the physical condition of the member or a dependent, the Association, upon the recommendation of the Medical Director, may make special membership arrangements with such applicant with respect to the services to be procured for him by the Association."

And Article IV, Section 14: "The Association does not guarantee that it will provide any or all of the services above specified and for which it will attempt to contract on behalf of its members; and it shall not be liable to any member or his dependent in any manner whatever if it should for any reason, including lack of funds, be unable to procure any or all of said services when called upon to do so. The Association does not guarantee that any physician or physicians with whom it may enter into a contract to render services will perform or properly perform such contract; and its only obligation in the event of the breach of such contract by any physician shall be, on request, to use its best effort to procure the needed services from another source. * * *."

■ It will be noted at once that the Association in setting up limits or restrictions on memberships did not attempt to withhold all protection from members suffering from "ailments present at admission." It merely provided that such members should *reimburse* the Association for the cost of services procured during the first ten months of membership. Reimbursement presupposes some outlay of funds or expense incurred by the Association. It cannot mean as here employed that the member must secure the service at his own cost; if he does, nothing at all would be repayable to the Association and the provisions of Article IV, Section 15 would be rendered meaningless and the membership valueless. For if the member is required to contract directly he loses all benefit of the low-cost purchasing power which the Association possesses.

We therefore construe the by-laws to mean that in such a situation the duty of the Association is to provide the service, obtaining for its member the benefit of lower costs and then look to the member for reimbursement. This interplay of responsibilities was recognized and clearly stated in Jordan v. Group Health Association, 71 App.D.C. 38, 107 F.2d 239, 247, where Mr. Justice Rutledge, speaking for the Court, said:

"To summarize, the distinctive features of the cooperative are the *rendering of service,* its extension, the bringing of physician and patient together, the preventive features, the regularization of service as well as payment, the substantial reduction in cost by quantity purchasing, *in short, getting the medical job done and paid for;* not, except incidentally to these features, the indemnification for cost after the service is rendered." (Emphasis supplied.)

■ If we were to adopt appellant's contention we would be holding the protection of the members to an absolute minimum, not justified by any reasonable construction of the by-laws. This Association was formed for the purpose of providing "any and all kinds of medical, surgical and hospital treatment to the members";[2] yet it gave this member none of those things. Its function was "getting the medical job done and paid for";[3] but here it refused to do either. It was its duty to use its best efforts for the member; but here it used no effort whatever. Assuming as we do that the condition imposed upon appellee's membership[4] was reasonable, the Association's duty was to procure the service and give the member the benefit of the lower rates which it could, but he could not, obtain. Its right to reimbursement would then be clear under the by-laws. But it was not justified in leaving the member to his own devices and withdrawing all protection from him.

The Association did not charge fraud or bad faith. It rested its defense entirely on the proposition that the existence of the ailment at the time of admission to membership precluded recovery. Nor did it claim that it was unable to procure the service for the member. (It had in fact guided him to the very surgeon who later performed the operation.) We agree that it would not be liable for a mere *inability* to protect the member.[5] But inability is far different from refusal.

We therefore rule that in these circumstances the by-laws required the protective procedure we have outlined and that refusal to follow it made a case of liability as a matter of law and justified the ruling of the trial judge.[6]

■ In returning the case with our affirmance we think we should order a modification which will result in a final disposition of all matters in dispute with complete fairness to both parties. Appellant should be credited with the $75 which the operation would have cost had appellant procured it and which appellee would have been bound to repay. We therefore

---

[2] Preamble to by-laws.

[3] Jordan v. Group Health Association, supra.

[4] We here refer not to the spleen condition expressly restricted at the outset but to the prostatic trouble for which treatment was denied some months after membership was granted.

[5] By-laws, Article IV, Section 14 (footnote 1, supra).

[6] Little Rock & M. R. Co. v. Barry, 8 Cir., 84 F. 944, 43 L.R.A. 349; Wiggin v. Knights of Pythias, C.C.W.D. Tenn., 31 F. 122; Battista v. Horton, Myers & Raymond, 76 U.S.App.D.C. 1, 128 F.2d 29; McReynolds v. Mortgage & Acceptance Corp., 56 App.D.C. 342, 13 F.2d 313; Turner v. Mertz, 55 App. D.C. 177, 3 F.2d 348, 39 A.L.R. 1140; Walker v. John Hancock Mut. L. Ins. Co., 75 N.J.L. 281, 68 A. 113.

modify the judgment to require that plaintiff file in the trial court within ten days from the effective date of our mandate, a remittitur in the sum of $75; otherwise a new trial is to be ordered. With that modification the judgment is affirmed. There is ample authority for ordering such modification or reduction when the computation is clear on the record.[7] In other items of plaintiff's claim there seems also to be a differential between the amount expended and the amount reimbursable to appellant, but we have no way of computing it from any evidence in the record. Nor, since the point was not made at the trial, can we order the case reopened for that purpose.

*Modified and affirmed.*

[7] United States v. Eaton, 169 U.S. 331, 18 S.Ct. 374, 42 L.Ed. 767; Hansen v. Boyd, 161 U.S. 397, 16 S.Ct. 571, 40 L.Ed. 746; Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41, 15 S.Ct. 751, 39 L.Ed. 889; Washington & G. R. Co. v. Tobriner, 147 U.S. 571, 13 S.Ct. 557, 37 L.Ed. 284; Interstate Engineering Co. v. District of Columbia, 72 App.D.C. 152, 112 F.2d 214; Abell Co. v. Ingham, 43 App.D.C. 582; Ross v. Fickling, 11 App.D.C. 442.