**ARSENAULT v. ANGLE.**

No. 302.

Municipal Court of Appeals for the District of Columbia.

July 27, 1945.

Rehearing Denied Aug. 6, 1945.

---

Arthur L. Willcher, of Washington, D. C., for appellant.

H. Max Ammerman, of Washington, D. C. (Louis Ottenberg, of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Defendant has operated a rooming house at 1460 Harvard Street, N. W. She originally took possession under a one-year lease which by its terms expired on November 14, 1944, and which gave the lessor or its assignee the right to terminate it in the event the property was sold during the term of the lease, by giving the lessee a ninety-day notice. On January 16, 1945, plaintiff purchased said premises, served a thirty-day notice on defendant and sued for possession under the Emergency Rent Act, claiming that she required the home for her immediate and personal use and occupancy as a dwelling.[1] Trial was by jury and resulted in verdict and judgment for plaintiff. Defendant appeals.

At the trial plaintiff testified that she purchased the property from the National Savings & Trust Company; that she was 75 years of age, in poor health, and practically blind; that she was familiar with the Harvard Street neighborhood, having previously lived there for 25 years; that she would be better able to make her way unassisted there than in the neighborhood where she now lives, on 30th Street between two streets (Ordway and Porter) which contain steep grades that prevent her from shopping near her home.

At the close of plaintiff's case defendant made a motion for a directed verdict on the grounds that plaintiff had not proved ownership and that defendant was entitled to ninety days' notice to quit. The trial judge denied the motion.

Defendant testified that she had been operating a rooming house at the premises in suit but had never personally resided there; that there were 18 roomers in the house and that the house contains 11 rooms and $2\frac{1}{2}$ baths; that at the time she entered into the lease with the National Savings & Trust Company she had purchased the rooming house business on the premises from its former owner. Although plaintiff's good faith was disputed at the trial it is not an issue on this appeal.

Three questions are presented for our decision:

1. Appellant urges that the trial court erred in refusing to allow her to explain the terms of the lease, to show that she was entitled to ninety days' notice to vacate. She points to the provision in the lease for a ninety-day notice in the event the premises should be sold during the term of the lease; and argues that when she held over after its expiration the ninety-day provision remained in force, and a thirty-day notice was insufficient to terminate her tenancy. She contends there are latent ambiguities in the lease, which she was entitled to explain by parol. The rec-

---

[1] Code 1940, § 45—1605(b)(2).

ord does not indicate what her explanation would have been, or how she could have overcome the language of the lease. Such language was clear and unambiguous. It provided for a ninety-day notice only *during the year the lease was in effect.* When defendant held over and paid rent after the lease expired she became a tenant by sufferance [2] and was entitled to the usual thirty day notice under the Code,[3] and no more. Therefore the trial judge properly refused to admit testimony explaining the terms of the lease. Parol evidence is admissible to show circumstances surrounding the parties at the time of making a written contract in order to ascertain, but not to alter, the true meaning of the contract.[4] Such evidence will not be admitted to contradict or vary terms where, as here, the written instrument clearly sets forth the agreement.[5] Defendant made no offer to show any additional stipulation or collateral agreement [6] but rather to show the legal effect of the notice clause in the lease. This, as we have said, was properly excluded.

2. Appellant claims that the court erred in refusing to permit the jury to construe the lease. This point is similar to the one we have just discussed. The ruling was reflected in the refusal of a tendered instruction reading: "The jury are instructed that they are to determine the intention of the parties to the lease agreement between the National Savings and Trust Company and the defendant and to determine therefrom whether the defendant was entitled to 90 days notice to quit the premises. If you determine that the defendant was entitled to 90 days notice to vacate but was not given such notice then your verdict must be for the defendant."

In effect appellant sought to have the legal question submitted to the jury. We think the trial judge properly refused to do so. The terms of the lease dealing with the 90-day notice were plainly set forth and involved no factual dispute which the jury might have considered. There is nothing before us which would even suggest that this was other than a legal question to be construed and decided by the court.[7]

3. Appellant further argues that the court wrongly refused to permit testimony concerning the price she had paid for the rooming house business and how much thereof she had recouped. We rule that such testimony was properly excluded, for it had no bearing on the question of plaintiff's good faith, legality of the notice, or any other question in the case. Whether defendant had recovered some or all—or none—of her original investment, whether the venture was a success or a failure, were not material to the questions to be decided.

Though the Rent Act was enacted primarily for the benefit of tenants, owners have rights too, and the Act "did not intend that the rights given the tenant be used to frustrate the rights reserved to the landlord." [8] And when an owner's rights are as clearly established as they were here, a tenant must yield regardless of the hardships involved.

Affirmed.

[2] Morse v. Brainerd, 42 App.D.C. 448; Soper v. Myers, 45 App.D.C. 286; Weaver v. Koester, 54 App.D.C. 80, 294 F. 1011; National Cafes, Inc., v. Elite Laundry Co., 57 App.D.C. 178, 18 F.2d 828; H. L. Rust v. Drury, 62 App.D.C. 329, 68 F.2d 167; Hampton v. Mott Motors, D.C.Mun. App., 32 A.2d 247.

[3] Code 1940, § 45—904.

[4] Tyssowski v. Smith, 35 App.D.C. 403; Fox v. Johnson & Wimsatt, 75 U.S.App. D.C. 211, 127 F.2d 729; Cole v. DeBobula, D.C.Mun.App., 38 A.2d 630.

[5] Minnix Co. v. L. C. Smith & Bros. Typewriter Co., 33 App.D.C. 357; Merritt v. Kay, 54 App.D.C. 152, 295 F. 973; Reliable C. & Realty Co. v. Waterproofing Service, D.C.Mun.App., 34 A.2d 124.

[6] Donaldson v. Uhfelder, 21 App.D.C. 489; Lippincott v. Kerr, 59 App.D.C. 290, 40 F.2d 802.

[7] Rheam v. Martin, 26 App.D.C. 181; Turner v. Mertz, 55 App.D.C. 177, 3 F.2d 348, 39 A.L.R. 1140; McReynolds v. Mortgage & Acceptance Corp., 56 App. D.C. 342, 13 F.2d 313.

[8] National Metropolitan Bank v. Judge, D.C.Mun.App., 37 A.2d 446, 447.