## BOVELLO v. FALVEY GRANITE CO., Inc.

### No. 881.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 26, 1950.

Decided Feb. 23, 1950.

---

James C. Wilkes, Washington, D. C., with whom George A. Glasgow, Washington, D. C., was on the brief, for appellants.

H. Clifford Allder, Washington, D. C., with whom Charles E. Ford, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

Falvey Granite Company, hereinafter called Falvey, by written contract agreed to furnish Bovello a cemetery memorial and erect it on his wife's grave for a price of $2,000. The headstone was to be of "special" design. Bovello in negotiating with Falvey exhibited a small print of a picture of St. Theresa. He explained that his wife had prayed before this picture and because of this he wished to have a likeness of his wife's Saint carved in the stone. A drawing was made of the proposed monument. This drawing contained a sketch of the figure to be carved in the stone. Bovello approved the design, but it was agreed that the picture of the Saint would be sent along with the sketch to Barre, Vermont, where the stone was to be manufactured. Bovello paid one-half the purchase price when the contract was entered into and agreed to pay the balance when the monument was erected.

The monument was completed and installed at the cemetery. Shortly thereafter Bovello stated to Falvey's president, Cox, that he had seen the stone, that it "appeared nice" but that his family had not had time to look at it. Later Bovello notified Cox that he was dissatisfied with the figure and that it did not resemble the picture. He refused to pay the balance of the purchase price and this suit was instituted. Bovello filed a counterclaim, alleging he had been compelled to pay $1,500 in having the memorial completed to accord with the contract, and asking judgment against Falvey for $500, the excess he had paid out over the contract price.

The case was tried to the court without a jury and the trial court made a general finding for the plaintiff on its claim and against the defendant on the counterclaim. Defendant has appealed.

It is contended by the appellant that the court below erred in finding that the finished monument conformed to that for which appellant contracted. He claims that the contract required that the monument should bear an image resembling in appearance the picture of St. Theresa, and that in fact it did not.

As we view the case the following issues were developed at trial. First, to what extent did the agreement of the par-

ties require that the figure in the stone should resemble the figure in the picture? Second, did the carving resemble the picture to the extent required by the agreement? Third, was the completed memorial free from defect in workmanship as required by the agreement? Each of these issues posed a question of fact. Although the first issue would generally be a question of law,[1] where, as here, the language of the contract does not clearly disclose the intent of the parties, and evidence of surrounding circumstances has been resorted to, the question is one of fact.[2]

From the evidence concerning the contract the court must have found that the picture of the Saint was an integral part of the contract and intended as a model for the stone figure. The whole contract was built around this picture. Both the picture and the sketch were sent to Barre, Vermont, to be used in carving the headstone. However, the fact that the picture was to be used as a model does not necessarily mean that the parties intended the stone carving to be an exact reproduction. We do not understand the appellant to so contend. The degree of resemblance that was to be produced in the stone depended upon the standard or quality of work intended by the parties. There lies the center of the controversy.

The court could have found from the evidence that the standard of work intended was of a character usually furnished by commercial stone carvers for cemetery monuments of the size and type here involved. This seems apparent from the fact that the contracting party which was to furnish the stone was a corporation engaged in the cemetery memorial business. The transaction was not one of an artist commissioned to execute a work of art, but one of a trading company hired to do work through an agent unknown to the hiring party. The fact that the design was to be special and not stock did not compel a finding that the quality of the work in depicting a resemblance to the picture was to be other than that ordinarily executed by those in a similar business. We cannot say as a matter of law that such a finding would be erroneous.

The evidence as to the completed monument was conflicting. Appellant testified that the carving did not in the least resemble the picture furnished by him. There was also testimony of two experts for appellant that the work on the figure was poor; that the carving was "crude"; that the face was hard and masculine, etc. One of these experts was a stone carver who was presently in the business of furnishing cemetery stonework. The other was apparently an artist, although he testified that he did some work on cemetery memorials. The court was not compelled to accept the testimony of these experts. Besides the fact that there was conflicting testimony on the opposite side the court may also have considered that the standard used by these men was a higher one than called for by the contract.

The appellee introduced photographs of the finished memorial. These indicated that the figure carved in the stone did resemble the picture in a general way. The photographs as well as the picture illustrate a person garbed in nun's habit, surrounded by a halo and carrying a cross and flowers in folded arms.

Cox testified that in his opinion the quality of workmanship in the memorial was good and that the sculpture was produced in accordance with the original sketch. Appellant objected to the admission of this testimony and assigns it as error. The admission was without error. With twenty-eight years experience in the business of selling stones and monuments the witness was qualified to express an opinion. The fact that his comparison was to the sketch does not make it error. The court had the sketch before it. It was part of the contract and could be compared by the court to the picture.

1. McReynolds v. Mortgage & Acceptance Corporation, 56 App.D.C. 342, 13 F.2d 313; Turner v. Mertz, 55 App.D.C. 177, 3 F.2d 348, 39 A.L.R. 1140.

2. Soldano v. Holmes, D.C.Mun.App., 60 A. 2d 535; 3 Williston, Contracts, 3d Ed., § 616.

Further than this the court had before it the fact that appellant, according to his own testimony, stated to Cox after he first saw the monument that it "appeared nice." Although he explained that he had only made a brief inspection at the time, it would seem that a person looking at work such as this for the first time would look closely enough to tell whether he received what he had contracted for. This statement by itself would not be controlling, yet it does lend weight to the conclusion that the monument was what it was intended to be, and in conjunction with the other evidence is sufficient to support the finding of the court.

As we said before all the issues posed questions of fact. They were all resolved in appellee's favor, and we cannot say as a matter of law that the trial court should have found otherwise.

We feel it necessary to call attention to the inclusion in appellee's brief of many statements of fact which find no support in the record. The record comes here not in a stenographic transcript of testimony but on a narrative statement of proceedings and evidence approved by the trial court. This court and the parties are bound by that statement. If counsel are not satisfied with the completeness of the statement steps should be taken in the trial court to supply the omissions. Counsel have no right, and ought not to attempt, to supplement or contradict the record by statements in a brief.

Affirmed.

CLAGETT, Associate Judge (dissenting).

As we have said before, the Act creating this court, Code 1940, Supp. VII, § 11—772(c), provides: "If the case shall have been tried without a jury, The Municipal Court of Appeals for the District of Columbia shall have the power to review both as to the facts and the law, but in such case the judgment of the trial court shall not be set aside except for errors of law or unless it appears that the judgment is plainly wrong or without evidence to support it."

While we are not bound by the reasoning of the trial court, I believe in the present case that the underlying reasoning of the trial court was erroneous and led to a result which was plainly wrong and should therefore be reversed. The statement of proceedings and evidence approved by counsel for both parties, as well as by the trial judge, states that the judge held among other things "that the parties had dealt with a commercial type of product which was delivered in accordance with the contract." On the contrary, there was admitted without objection evidence of defendant to the effect that he delivered to plaintiff and explained to the president of plaintiff company "that the picture of St. Theresa which he exhibited * * * was the very picture before which his recently deceased wife had prayed for many years; that because of this sentimental reason he wished to have a likeness of his wife's Saint carved on a monument at the head of his wife's grave." The effect of this conversation was admitted by the president of plaintiff company. I believe it is clear, therefore, that the evidence clearly shows that this picture which was received in evidence was to be reproduced at least in a general way on the monument. There were also received in evidence photographs of the monument as installed by plaintiff corporation. Without entering upon any artistic discussion, I think it is entirely clear that defendant did not receive what he contracted to pay for. I do not see how there could be any difference of opinion as to the fact that the picture supplied by defendant shows a face which I would describe as having a kindly, benign expression, whereas the face reproduced on the monument has a harsh, even forbidding, expression. The figure on the monument as supplied by plaintiff may be similar to the standard figure in a cemetery; certainly I do not see how there can be any difference of opinion that it is very different from the picture supplied by defendant as a guide. It is of some significance, I think, that defendant was so dissatisfied with the figure on the monument supplied by plaintiff that he actually paid another man $1,200 to replace the figure.