**ROBERTS et al. v. VETERANS COOPERA-
TIVE HOUSING ASS'N.**

No. 1175.

Municipal Court of Appeals for the
District of Columbia.

Argued March 24, 1952.

Decided April 24, 1952.

John R. Fitzpatrick, Washington, D.C.,
with whom Francis J. Ortman, Washington,
D.C., was on the brief, for appellants.

Edward L. Bridges, Washington, D.C.,
with whom James R. Worsley, Jr., and
Klagsbrunn, Hanes & Irwin, Washington,
D.C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and
HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Roberts and McInnis, a firm of lawyers,
sued Veterans Cooperative Housing Associ-
ation, a corporation, hereafter called the

cooperative, for fees for legal services. The cooperative is the owner of Naylor Gardens, a housing project of approximately 750 apartments, which was purchased by the cooperative from the Government for approximately $5,500,000 after lengthy negotiations. Mr. Roberts was instrumental in the formation of the cooperative and represented it in the negotiations for the purchase of Naylor Gardens. After the contract of purchase was executed there was a meeting of the board of directors of the cooperative on January 29, 1948, to take action necessary for consummation of the purchase and at this meeting, at which Mr. Roberts was present, the subject of payment for Mr. Roberts' services was considered. It was agreed that for services already rendered Mr. Roberts' firm was entitled to receive $25,625 and an agreement was reached as to the manner and time of payment of this sum.

At this same meeting there was brought up the question of future representation of the coopertaive by Mr. Roberts' firm and compensation therefor. As a result, the following resolution of the board was adopted:

"Be It Further Resolved: That the firm of Roberts & McInnis, counsel for the Association, shall be paid a $300.00 monthly working retainer starting February 1, 1948 to cover legal work done for the Association except in exceptional cases."

On February 2, 1948, Mr. Roberts wrote the cooperative confirming the agreement for payment for past services. The last three paragraphs of his letter stated:

"If it is most convenient with you, we will also submit a bill immediately for $300.00 per month retainer for January 1948, and at the end of each month will likewise bill for retainer in the amount of $300 together with a statement of disbursements on matters approved by the Association.

"It is understood, of course, that in the event of any major project we will previously agree with the President and the Board as to any additional payment.

"This arrangement for retainer and employment is to continue for 1948 and thereafter until 30-day notice in writing to the contrary is given by either party to the other."

On April 6, 1948, the board authorized Mr. Roberts' firm to petition the Administrator of Rent Control for an increase in rent ceilings for Naylor Gardens. The petition was filed and hearing had before the examiner on August 2 and 3, 1948. The hearing resulted in a stipulation, approved by the examiner, for an increase in rent of 8% or approximately $40,000 a year. The increased rent schedule became effective September 1, 1948.

On November 22, 1948, Roberts and McInnis billed the cooperative for $2,500 for services rendered in the rent case. The cooperative denied any obligation to pay the bill and this action resulted.[1] The case was tried by the court without a jury and finding and judgment were entered for the cooperative.

At trial the cooperative did not question the reasonableness of the $2,500 fee, but contended that under the retainer contract no fee for the rent case was payable. Throughout the trial and on this appeal the parties have been at loggerheads as to the issue in the case. Plaintiffs (Roberts and McInnis) contend that the retainer contract provided for additional compensation in "exceptional cases," and that they and the directors of the defendant (the cooperative) had understood the rent case to be exceptional and compensable. Defendant contends that the contract required a "previous agreement" between the parties as to whether a case was exceptional and that no previous agreement was made.

■■ It is not too clear what defendant would recognize as a "previous agreement." The emphasis it places on the term implies that a formal resolution was required to classify any services as exceptional. An agreement, however, is nothing more than

[1.] On May 27, 1949, the cooperative terminated the retainer agreement with Roberts and McInnis.

a manifestation of mutual assent.[2] Was there such a manifestation in this case? The evidence showed an understanding on the part of some of the directors that the services in question were exceptional, but this mental attitude did not constitute an agreement. "Agreement consists of mutual expressions; it does not consist of harmonious intentions or states of mind."[3] Moreover, this understanding was not shared by all the directors and there was positive testimony that the board never discussed the matter at any meeting. We cannot say that the evidence compelled a finding that before the rent case was commenced, or at any time, the parties agreed that it was an exceptional case and not within the retainer contract.

■ However, we do not think that the absence of an agreement as to the nature and compensability of the services in the rent case precluded a recovery for those services if the rent case was in fact exceptional. The agreement clearly called for additional compensation in exceptional cases. The difficulty lies in the determination of what was intended by the parties by the term "exceptional cases." The word "exceptional" is broad and general in meaning and the parties in their contract made no attempt to define it. Evidently Mr. Roberts recognized the generality of the terms "exceptional case," as used by the board, and "major project," as used by him, and anticipated the possibility of disagreement as to what type of legal services were included in such terms, and very properly he stated in his letter that in the event of being called upon to do work he considered outside the retainer contract there would be a previous agreement as to additional compensation. But, as we have seen, there was no agreement by the parties that the rent case was an exceptional case calling for payment over and above the retainer. Since the parties did not define exceptional case and did not, and do not, agree that the rent case was such, it became necessary for

the court to determine whether the rent case was exceptional within the intended meaning of the term as used by the parties.

■ The question presented to the court was one of fact and not of law. Where the language of the contract does not clearly disclose the intent of the parties, and evidence of surrounding circumstances has been resorted to, the question is one of fact.[4] Our question then is whether there was evidence from which the trial court could find, as it did, that the rent case was not an exceptional case or major project.

■ The actions of the parties may always be considered as evidencing their interpretation of their contract. Although Mr. Roberts had written that "in the event of any major project we will previously agree with the President and the Board as to any additional payment," no such agreement was made with respect to the rent case. This was some indication that neither party considered the rent case a major project. It is true that Mr. Roberts testified that at several board meetings he made the statement that the rent case involved too much work to undertake as a regular matter, but he did not testify that an agreement to this effect was reached. Moreover, there was testimony that as late as October 1948 Mr. Ortman, an associate of Mr. Roberts who had done extensive work on the rent case, expressed doubt about whether the rent case was exceptional.

Some significance may also be given to the fact that, although the rent case was commenced within a short time after the retainer contract was made, Mr. Roberts never communicated in writing to the board his claim that the rent case was outside the retainer contract until the rent case was practically completed. This is particularly significant in view of the fact that the question of seeking an increase in rent had been under consideration from the time of acquisition of the property and such proceeding was contemplated when the re-

2. Restatement, Contracts, § 3.
3. Corbin, Contracts, § 9.

4. Bovello v. Falvey Granite Co., Inc., D.C. Mun.App., 71 A.2d 536. See also Zlotnick v. Crisp, 87 U.S.App.D.C. 339, 340, 185 F.2d 502, 503, footnote 2.

tainer contract was made. Since the retainer contract did not expressly exclude the rent case, it could be assumed that the parties intended it to be included in that contract. Certainly the rent case was not an unexpected event and it was not an unusual or extraordinary proceeding.

Finally, an attorney possesses superior knowledge of the work which a retainer is likely to involve, and it is only fair to expect him to designate clearly the services covered by the retainer when he accepts employment. If he later claims compensation for work which he contends was not included in the retainer, ambiguities and doubts concerning the agreement should be resolved against him.[5]

For the reasons given above we must conclude that the trial court had a substantial basis in the evidence for finding that the rent case was within the terms of the retainer and was not an exceptional case. We might hold otherwise if we were the trier of the facts, but such is not our function.

Complaint is made of certain remarks made by the trial court in rendering its opinion and denying a motion for new trial. These remarks were injudicious and should have been left unsaid, but we do not feel that they have the effect of nullifying the finding made on substantial evidence that plaintiffs were not entitled to recover.

Affirmed.

QUINN, Associate Judge (concurring).

My colleagues contend that the parties are confused as to what the real issue actually was. I think the issue is the construction of a simple contract. This contract is spelled out by the Board's resolution and appellant's letter set forth in Judge Hood's opinion. The two must be considered together in order to ascertain the terms of the contract.

First, the parties agree that a relationship of attorney and client is created on a retainership basis. The contract goes on to state that additional payments will be made in the event of exceptional cases or major projects, *plus* an additional term requiring a previous agreement between the parties as to what cases were to be considered exceptional or major so as to entitle the attorneys to additional compensation.

In our role as an appellate court, it is now our function to construe this contract in accordance with the law of this jurisdiction under the rule of stare decisis.

I feel that the contract is clear and unambiguous. This is clearly a question of law as we recently stated in Friedman v. Thomas J. Fisher & Co., D.C.Mun.App., 88 A.2d 321.

There was a disagreement between the parties as to whether the rent case was an exceptional one, the attorneys contending it was while the cooperative claimed it was not. This presented a question of fact which was within the sole province of the trial court. Its determination of this factual issue precludes us from reconsidering it.

My colleagues would go into great detail to explain the meaning of the term "agreement" as it is defined by the text writers. I feel, however, that the inclusion of the additional contractual condition "we will previously agree with the President and the Board * * *" is patently clear that an obligation existed on the part of the attorneys to enter into such a previous agreement, whenever in their opinion the cooperative requested them to handle what they considered to be a major project or one that they felt might develop into one. By their view the majority opinion makes this "agreement" a term which I feel is contrary to the terms of the contract as I have heretofore described it.

The majority opinion by holding that "if the rent case was in fact exceptional" the attorneys would not be precluded from recovering is, to my mind, flying in the face of the contract as made by the parties. It is an elementary principle that the court may not make a new contract for the parties.

5. In re Irwin, 162 Or. 221, 91 P.2d 518; Gabrielson v. Gorin, 92 Wash. 408, 159 P. 387; Baldie v. Bank of America Nat. Trust & Savings Ass'n, 97 Cal.App.2d 70, 217 P.2d 111.

This my colleagues have attempted to do by saying that in the absence of an agreement the attorneys could still recover if the rent case was in fact exceptional. The fact is the contract required a previous agreement, and we can not ignore the words of the contract but are bound by them.

In reading the record I fail to find that Mr. Roberts anticipated any difficulty in reaching an agreement on what might be considered an exceptional case which would warrant additional compensation. On the contrary, I am of the opinion that Mr. Roberts was experiencing extremely good relations with the Board of Directors at the time he wrote the letter. I should like to point out that the majority are inconsistent at this point in their opinion. They previously stated that a recovery could be had in exceptional cases even without a previous agreement, while here they state that Mr. Roberts very properly stated in his letter that in the event of exceptional cases there would be a previous agreement as to additional payments.

I am compelled to say that in this case the parties were governed by the contract as stated above. In construing the condition that a previous agreement would be had as to additional compensation in exceptional cases, I find that if appellants thought this rent case was an exceptional case they should have made such a previous agreement. By their failure to do so they are precluded from recovering under the contract.